WARD *et al.* v. BROWN *et al.*, *Appellants.*

1. **Client and Attorney** : TRUSTEE. Where an attorney purchases land in his own name, at a sale under an execution in favor of his client, the latter has the option to treat the attorney as his trustee, but such right of election must be exercised by the client within a reasonable time.

2. **Administrator.** Where the client, in such case, is the administrator of an estate, his acts and conduct in the matter of such purchase will bind the heirs and the estate.

*Appeal from Barton Circuit Court.*—HON. C. G. BURTON, Judge.

REVERSED.

*Botsford & Williams* and *Robinson & Harkless* for appellants.

(1) Brown was under no duty or obligation to buy the land for the benefit of the estate. *Averill v. Williams*, 4 Den. 295; *Beardsley v. Root*, 11 Johns. 464; *Downey v. Gerrard*, 3 Grant (Pa.) 65; *Savery v. Sypher*, 7 Wall. (U. S.) 157; *Warren v. Hawkins*, 49 Mo. 138. (2) It follows, as Brown was under no obligation to purchase for his client, a purchase for himself, at an open public sale, of the property sold on execution in

favor of his client, in the absence of any fraud on his part, was not prohibited by any law or public policy, was authorized, was neither fraudulent nor void in law or in fact, and the sheriff's deed vested in him the legal title to the premises conveyed by it. *Drayton v. Drayton*, 1 Desau. Eq. (S. C.) 567; *Stallings v. Foreman*, 2 Hill's Ch. 405; *Chorpenning's Appeal*, 32 Pa. St. 315; *Fisher's Appeal*, 34 Pa. St. 29; *Shakely v. Taylor*, 1 Bond C. C. 146; *Greyson v. Weddell*, 53 Mo. 537. (3) The administration could have elected to treat Brown as holding the legal title in trust for the estate. But in the absence of such election Brown held the title for himself. *Downey v. Gerrard*, 3 Grant, 65; *Eshleman v. Lewis*, 49 Pa. St. 416. (4) The right of election on the part of a client to claim the benefit of a purchase made by an attorney in his own name must be exercised within a reasonable time after the client knows of such purchase. *Johnson v. Outlaw*, 56 Miss. 541; *Wade v. Pettibone*, 11 Ohio, 57; s. c., 14 Ohio, 563. What is reasonable time. *Bryant v. Saling*, 4 Mo. 522; *Imhoff v. Ry.*, 20 Wis. 348. (5) Unreasonable delay will deprive a party of his right to enforce a trust. *Follensbee v. Kilreath*, 17 Ill. 522; *Hawley v. Cramer*, 4 Cow. (N. Y.) 735; *Munn v. Burgess*, 70 Ill. 611; *Bliss v. Prichard*, 67 Mo. 181; *Kelly v. Hurt*, 74 Mo. 565; *McQuiddy v. Ware*, 20 Wall. 19, 20. (6) If the administrator is barred by neglect to treat the purchase land as made for his benefit, the creditors and heirs are also barred. *Bryant v. Weems*, 29 Ala. 428; *Williams v. Obey*, 8 Humph. (Tenn.) 569; 2 Perry on Trusts, sec. 858; *Bliss v. Prichard*, 67 Mo. 181; *Bennett v. Gartock*, 79 N. Y. 302; Perry on Trusts, 558-9-60; 35 Am. Rep. 517; *Harnsden v. Pratt*, 6 Jones Eq. 327; *Flemings v. Gilmer*, 35 Ala. 62; *Mason v. Mason*, 33 Ga. 435. An infant is barred by the laches of his trustee. Lewin on Trusts, 572, side p. 722; *Wych v. The East India Co.*, 3 P & W. 310, note *g*.

*Thurman & Wray* for respondents.

(1) The evidence shows that Brown's *status* is that of a trustee for the estate. He stated to Ward that he was bidding for the estate, and that he paid the estate's money for the land by crediting his bid on the execution. *Bedford v. Moore,* 54 Mo. 443; *Miller v. Davis,* 50 Mo. 572; *Buren v. Buren,* 79 Mo. 538. (2) He became a trustee for the benefit of the estate, and was never discharged from the trust. (3) The doctrine of laches is not applicable to the facts of this case. Laches is in the nature of an equitable estoppel, and full knowledge of the facts is necessary. *Bradshaw v. Yates,* 67 Mo. 221; *Henroid v. Neusbaumer,* 69 Mo. 96; *Kelly v. Hurt,* 61 Mo. 463. Nothing short of the statutory bar, ten years, will defeat a recovery where the right is clear and an equitable accounting may be had, and all the parties to the transaction are living and may be placed *in statu quo. Hunt v. Hunt,* 50 Mo. 445; *Kelley v. Hurt,* 61 Mo. 463, affirmed in *Bradshaw v. Yates,* 67 Mo. 221; *Spurlock v. Sproule,* 72 Mo. 503, and cases cited. (4) If the administrator of the estate of George E. Ward, deceased, was a necessary party to plaintiffs' recovery in this case, such a defect should have been raised by demurrer or answer, and is now waived. *State to use of Wolf v. Berning,* 74 Mo. 86; *Reilly v. Tenbroeck,* 63 Mo. 562; *Little v. Harrington,* 71 Mo. 391. Matters in abatement must be specially pleaded in answer; general denial admits capacity to sue. *Carpenter v. Whitman,* 16 Johns. 208; 2 Estee's Pleadings, p. 416, secs. 69 and 74; Green & Myers, p. 304, sec. 793; Story's Equity Pleadings, sec. 238: *White v. More,* 11 Cal. 69; Whittelsey's Practice, p. 113, and Whittelsey's Supplement, sec. 160 *a*; see *b* and *c*, page 98.

HENRY, C. J.—This suit has for its object the divestiture of defendants of their legal title to the north half of section thirty-three, township thirty-two, range thirty-three, in Barton county, and the investment of the title thereto in the plaintiffs, who are the heirs at law of George E. Ward, deceased. E. G. Ward, one of the plaintiffs, administered on said estate, and, as such, instituted a suit in the circuit court of Barton county, against one N. R. Cornell, and obtained a judgment for twenty-five hundred dollars, on which an execution issued which was levied upon the land in controversy, as the property of said Cornell, and at the sale of the same under said execution, on the tenth of May, 1872, Brown, one of the defendants, who was the attorney of said administrator in said cause, purchased it, and had the amount of his bid, one hundred and sixty-five dollars, entered as a credit on the execution. He also paid, as costs of said suit, about one hundred dollars. On the same day he informed the administrator of his purchase, and that the estate could have the benefit of the purchase on payment to him of his fee for services in said cause, and the money advanced to pay costs. The land purchased, at the time, was worth from one dollar and fifty cents to three dollars per acre, but was incumbered with unpaid taxes, and the title of Cornell was doubtful, he and his wife having by deed dated the twenty-fourth of July, 1861, conveyed it to one Albright.

The present suit was instituted the eighteenth of April, 1881, nine years after the purchase by Brown, and after the lands had risen in value to ten dollars per acre. At the time of the purchase by Brown, all the plaintiffs, except Josephine, were adults, and resided in Barton county. The administrator testified that Brown, at the close of the term of the court at which he purchased the land, told him the amount of the expense he

had paid. That he had associated with him as counsel in the case his co-defendant, Robinson, who would have to be paid his fee, and wanted to know whether the administrator would pay the costs and fees and take the land, but no arrangement was made between them. Robinson testified that "Brown tried a long time to get the matter arranged. He tried to get Ward either to pay him and take the land, or he would keep it for what he had paid." Witness also had several conversations with Ward about a settlement with Brown, but he did not remember what was said.

Brown testified that he had no less than a half a dozen talks with Ward after the first conversation, and said to him: " You can let the matter stand as it is. I will pay the bid, deducting costs and expenses, and take the land and call it square, or he could take the land and pay me the amount I had paid out, and my fees." That "Ward always claimed that he did not have the money to pay costs and taxes, they having more land than they could take care of." He also testified that, in 1873, he said to Ward the matter ought to be settled, and Ward replied, "You keep the land and pay the bid." That they then had a settlement. Ward testified that he "never offered to take the matter off of his hands. He asked me to take the matter up. Brown told me how much it was right after the sale, and I never did attend to it, or offer to pay." Ward testified that from 1872 to 1880, Brown said he held the land for the estate. But, in 1874, he conveyed an interest in the land to Avery and Robinson, and they afterwards conveyed the land to the Edsells, and took a re-conveyance to themselves from the Edsells, who were unable to pay the purchase price. In 1874 the defendants commenced putting upon the land valuable and permanent improvements, and continued making improvements until this suit was instituted. No claim to the land was asserted by the Ward

heirs until 1880, and this suit was commenced in 1881, after defendants had instituted a suit against them to quiet the title.

These are the substantial facts, and the above is a synopsis of the testimony. On these facts and testimony, are the plaintiffs entitled to the relief they ask? Brown was not instructed, nor was he obliged, as attorney, to attend the sale and purchase the land for the estate, but having purchased it, although in his own name, the administrator had the option to take the land. If he chose, he could have held Brown as a trustee for the estate. This is conceded by the appellants, and is unquestionably the law. It is equally well settled that the client must exercise his right within a reasonable time. He cannot dally with the purchaser for years, and until the land appreciates greatly in value, and then assert a right. *Bliss v. Prichard*, 67 Mo. 181. In that case the attorney was directed by his clients to purchase the land for them. He purchased the land and took the title to himself, but plaintiffs were defeated in their suit to divest him of the title, because they had delayed to institute it eight years after they were informed that he had purchased, and taken the title in his own name, the land, in the meantime, having greatly appreciated in value. There was evidence in that case of bad faith on the part of the attorney. He was expressly directed to purchase for his clients. He did not inform them of his purchase, but they learned it from another party. In the case at bar, Brown was not instructed to make the purchase for his client, but having made it, immediately informed him of the fact, of the price paid and the expense incurred, and then, and repeatedly after, requested him to pay him his charges and expenses and take the land, which the client virtually declined to do, by never accepting the proposition, or taking any steps in that direction. Brown did not become a trustee by the pur-

chase, but only if the administrator, after the purchase, elected him to hold as such. *Downey v. Gerrard*, 3 Grant (Pa.) 65 ; *Beardsley v. Root*, 11 John. (N. Y.) 467. And this right of election must be exercised within a reasonable time. *Johnson v. Outlaw*, 56 Miss. 541 ; *Wade v. Pettibone*, 11 Ohio, 57 ; s. c., 14 Ohio, 563. There is no evidence tending to prove any unfairness in the transaction on the part of Brown, but, on the contrary, his conduct is characterized throughout with the utmost good faith.

In addition to these facts, four of the seven plaintiffs have conveyed to defendants, by quit-claim, their interest in the land, the administrator himself being one of the four. The others made no claim until 1880, and did not commence their suit until 1881. True, they say they did not know that Brown claimed adversely ; but it is a little singular that, living in the same county, they did not learn in the seven years that Brown was improving, and selling, and re-purchasing the land, that he was claiming it as his own. Jas. Brown, one of the plaintiffs, testified that he did not know until 1881 that Brown claimed adversely. He knew when he purchased at the execution sale that Brown purchased for the estate, but never spoke to Brown about it from 1872 to 1880. He was an adult residing in that county when the sale occurred and ever since. But an answer to all this is, that the administrator was Brown's client. He represented the estate, and, in this matter, could bind the estate by his agreement with Brown, express or implied, or by laches. The conduct of the administrator will warrant no other conclusion than that the estate had but little money and considerable land. That the land in controversy was of but little intrinsic value, and that the condition of the title would not justify him in taking the land for the estate, by paying the attorney's fees and costs expended by Brown, and, as was said in *Prichard v. Bliss, supra:* "The conviction is forced

upon the mind by the evidence, that if the land, instead of advancing, had declined in value, or remained of the: same value, with such a cloud upon the title, neither -this nor the circuit court would have been called upon to pass upon this case."

. The. judgment, which was for plaintiffs, is reversed, and cause remanded. All concur.