MARY C. WILBER, Appellant, v. R. B. ROBINSON, Respondent.

### Kansas City Court of Appeals, February 6, 1888.

CLIENT AND ATTORNEY—TRUSTEE.—Where an attorney purchases land in his own name, at a sale under a decree in favor of his client, the latter has the option to treat the attorney as trustee. But such right of election must be exercised by the client within a reasonable time.

APPEAL from Barton Circuit Court, HON. D. P. STRATTON, Judge.

*Affirmed.*

Statement of case by the court.

This suit is brought to require defendant to render an account of his stewardship as plaintiff's attorney in legal matters in which she had theretofore employed him. The judgment was for defendant, and plaintiff appeals.

The case was submitted on an agreed statement of facts, by which it appeared that, in August, 1874, defendant, being a practicing attorney, received a letter from plaintiff inquiring about the foreclosure of a mortgage held by her on lands in Barton and Vernon counties, to which defendant replied that he would foreclose the mortgage for a fee of fifty dollars ; that he did not know what the land would sell for, but would look into it before day of sale. Soon after, defendant received from plaintiff a note and mortgage for $2,546.48, upon which he obtained judgment of foreclosure December 17, 1875 ; that, as plaintiff's attorney, he had executions issued in March, 1876, and the lands sold, at which sales the defendant became the purchaser, intending, at the time he purchased, to convey to plaintiff, if she desired he should ; that the sales were fair and honest in every

respect, and the land brought the best price that could be obtained. After the sale of the Barton county land, defendant wrote plaintiff the following letter, which she received:

"Lamar, Mo., May 4, 1876.

"Miss M. C. Wilber, Auburn, N. Y.

"The land described in your mortgage against Fairbanks, lying in Barton county, has been sold and bid off by me at a nominal sum. The cost so far is $31.46. The land in Vernon county has not been sold yet, but will be as soon as possible. My fee is fifty dollars. If you want the Vernon county land bid off to you, I will have to go to that county for that purpose, which will cost you fifteen dollars more; if not, then the fifty dollars will pay all my fees. You will also have to pay the costs of the Vernon county sale, if you have the land bid off to you, perhaps about twelve dollars. Please send me the costs and my fee, and I will send you a deed of the land. Let me hear from you immediately, as I understand there are parties stealing the timber, and it should be looked after, as the land is worth nothing except for the timber. And the taxes should be paid.

"Yours, etc.,

"R. B. ROBINSON."

To which letter plaintiff replied, complaining of the attorney fees, and that she could not see why it would cost so much. In answer to this letter, defendant replied as follows:

"Lamar, Mo., June 2, 1876.

"Miss Mary C. Wilber, Auburn, N. Y.

"Yours of May 29 at hand. You speak of a misunderstanding. You seem to understand the matter just as I do. My fee was fifty dollars for foreclosing the mortgage. When the judgment was obtained, my duty was done; but, as you were not here, I kept charge of the sale, and, to save a sacrifice, I bid it off. If I had not bid, and let the land go to the highest bidder, you would only have had fifty dollars to pay, and that I

could have taken out of the price of the land, and sent you the balance, if it had brought more than fifty dollars and the costs, which amount, by the way, it would have brought at the sale. There are two hundred acres in this county, which I bought, intending to deed to you, if you desired. There is one deed missing in the chain of title, which I know nothing about. Perhaps it might be found and placed on record. If so, that would make the title to the two hundred acres good, except the payment of the taxes, which now amount to $73.40 on the two hundred acres. I do not know how much tax is due on the Vernon county land. You need not have the Vernon county land sold if you prefer. And then to clear up, the two hundred acres will stand about as follows: My fee, fifty dollars; taxes, $73.40, will increase, by interest, etc., to seventy-five dollars; costs so far, $31.46; total, $156.46. This amount paid will give you a good title, except the deed I spoke of, which I presume you know all about. Then you can have the Vernon county land sold at some future time. I hope you will see fit to take the land off my hands, as I do not want it at any price. You can most likely sell it for something there, so as to make it pay you.

> "Yours, etc.,
> "R. B. ROBINSON."

To this letter no reply was ever sent by plaintiff. A short time after writing this letter, Robinson had execution issued to Vernon county, and the Vernon county land was sold and a deed made by the sheriff to said Robinson.

On the twenty-ninth day of September, 1876, Robinson sent to Miss Wilber the following letter, which she received:

> "Lamar, Mo., Sept. 29, 1876.
> "Mary C. Wilber, Auburn, N. Y.
> "I am surprised at your delay about making some arrangements about the fees and the costs in your case against Fairbanks. I shall now delay a reasonable time

to receive an answer, and then, unless something is done, I shall send you the amount of my bid, less the costs, if anything, and pay the costs and keep the land myself. The timber is being stolen, and soon the land will not be worth the taxes, if it is now.   Hoping you will find it to your interest to settle up matters and receive a deed for the land, I am

"Yours, etc.,
"R. B. Robinson."

To this letter plaintiff made no reply, and never at any time sent money to pay costs or fees, or made demand of deed.   The next letter from plaintiff was dated March 4, 1881, and was as follows:

"Canoga, Seneca Co., N. Y., March 4, 1881.
"Mr. Robinson:

"Will you please forward my 'papers' sent you some years since.   Some of them for foreclosure; together with a schedule of proceedings; as I wish to know what you have done.   And oblige

"Yours respectfully,
"M. Cary Wilber.

"P. S.   The papers were sent you from Auburn, N. Y."

To this letter Robinson replied as follows:

"Lamar, Mo., March 9, 1881.
"M. Cary Wilber, Canoga, Seneca County, N. Y.

"Yours of March 4, 1881, at hand, and quite surprised me.   I had supposed that death in your case had claimed its own years ago, as several of the last letters I wrote you explaining your business in detail and urging you to fix up the matter are yet unanswered.   Please refer to those letters for a detailed statement.   You had better employ some good lawyer here to look after your matter if you expect to get something.   I have no settlement to make now.

"Yours, etc.,
"R. B. Robinson."

This was all the correspondence material to the

issue. The statements in the letters of Robinson to Miss Wilber were true in fact.

Robinson, in 1878, sold part of the land, and has been engaged selling it at various times since, as he could sell it in tracts, the last sale being in October, 1884, before the commencement of this suit; and has now sold it all. Robinson's bid for the Vernon county land was fifteen dollars, and for the Barton county land was thirty-seven dollars. The attorney fee charged was fifty dollars. The costs paid by Robinson were $46.46. Robinson has sold and given full covenant warranty deeds to all the land in Vernon county for one hundred and forty dollars ; and also of the Barton county land, by same kind of deed, to Waterhouse *et al.*, twenty acres the west half of the northeast quarter of the northwest quarter of section six (6), for one hundred dollars ; to M. S. Gardner, the southeast quarter of the northwest quarter and the east half of the northeast quarter of the northwest quarter of section six (6), for two hundred and sixty-five dollars. The remainder was sold to different parties on quit-claim deeds for two hundred and sixty dollars.

The record shows that the east half of the northwest quarter of section six (6) was entered by E. Brewer; and does not show that Brewer has conveyed. This is the deed spoken of in Robinson's letter as being off the record. The title of the several pieces of land, at the time of Robinson's purchase, was as shown by the abstracts hereto attached and marked exhibits "A" and "B." The taxes paid by Robinson on lands sold on warranty deeds were seventy-five dollars.

There was a supplemental agreed statement of facts as follows : "Admitted that there had been a large increase in the value of the land after the purchase by defendant, and before the commencement of this suit, there was established in and through said counties an important system of railroads greatly enhancing the value of all kinds of real estate and furnishing a market

for the same by increased immigration, and such things as are incident to the building of railroads; that plaintiff never furnished any security for costs in the suit against Fairbanks mentioned in the statement, and that plaintiff was at the time a non-resident of the state; and that no defence was made in the foreclosure suit; also that the deposition of Mary C. Wilber, so far as relevant and competent testimony, be included in the statement of facts.

### "DEPOSITION OF MARY C. WILBER.

"My name is Mary C. Wilber. My residence is now 101 North street, in the city of Auburn, N. Y. I am the plaintiff in the above-entitled action. I do not know the defendant personally; but know him through correspondence with him and correspondence with other parties. In or about the year 1876, I sent him a mortgage on some lands in the state of Missouri to collect the same and to foreclose the same. He was employed by me as my attorney for that purpose and to protect and look after my interests in the matter of the foreclosure of the mortgage sent him. The mortgage was given by Jonathan Fairbanks, of Springfield, Missouri, to me, I think for something over two thousand dollars. I did not understand that the defendant, R. B. Robinson, was going to purchase the land on the foreclosure of the mortgage; nor did I ever give him direction to purchase it in his name. He sent to me for money for services rendered, which I did not remit. At the time I received his letter I was ill; and I had been for a long time prior thereto and for a long time thereafter an invalid; and I did not fully understand just why the defendant wanted so much. When I first employed the defendant I understood the charges would not be over fifty dollars, and when I learned the charges were so much more I felt that I had been deceived; and it being more than I calculated on I did not have it to remit to him. I was financially embarrassed at the time, through long sickness and losses, and I did not have the money to send

Mr. Robinson. I never intended for Mr. Robinson to keep the land, nor did I elect to take what the property may have brought over and above the costs, and let Mr. Robinson have the land. I relied on him as my attorney to fully protect my interests, and never consented that Mr. Robinson should have the land; and was of the opinion, as he had bought it, that he, being my agent, would hold it for me. I have never consented that Mr. Robinson should keep the land."

BULER & TIMMONS, for the appellant.

I. To reverse the judgment of the circuit court, the appellant relies upon the following points and authorities. The general rule is, that the relations between attorney and client are of a fiduciary character —the attorney being held to the responsibilities and duties of agent or trustee for the client. Willard's Eq. Jur. 172, 173, 605; *Howell v. Ransom*, 11 Paige, 598; 1 Story Eq. Jur. (12 Ed.) sec. 310; *Roberts v. Moseley*, 64 Mo. 507, 511; *Bent v. Parish*, 10 Mo. App. 543, 557; *Edwards v. Gottschalk*, 25 Mo. App. 549.

II. The policy of the rule that, whatever is done by one acting in a fiduciary capacity, in regard to the business of the *cestui que trust*, shall be deemed to be for the benefit of the *cestui que trust*, is, "to shut the door against temptation." Willard's Eq. Jur. 187; *Davone v. Fanning*, 2 Johns. Ch. 252.

III. The facts in this case, as shown in the agreed statements, show not only the ordinary fiduciary relations of attorney and client between defendant and plaintiff, but, in addition, that defendant became, as to the property purchased by him, trustee of an express trust. As such he could not release himself by any act of his own. *Hunt v. Hunt*, 50 Mo. 445; *Kelley v. Hurt*, 61 Mo. 463; *Bradshaw v. Yates*, 67 Mo. 221; *Spurlock v. Sproule*, 72 Mo. 503; *Edwards v. Gottschalk*, 25 Mo. App. 549.

IV. The doctrine of laches is not applicable to the facts in this case. *Bradshaw v. Yates*, 67 Mo. 232;

*Henroid v. Neusbanmer,* 69 Mo. 96; *Spurlock v. Sproule,* 72 Mo. 510; *Butler v. Lawson,* 72 Mo. 228.

V. The fact that defendant has sold the land does not deprive the court of jurisdiction as a court of equity to follow the proceeds into his hands and require him to account to his principal. *Harrison v. Smith,* 83 Mo. 210; *Butler v. Lawson,* 72 Mo. 228.

THURMAN & WRAY, for the respondent.

I. Robinson was under no obligations to purchase for plaintiff. *Averill v. Williams,* 4 Den. 295; *Beardsley v. Root,* 11 Johns. 464; *Downey v. Gerrand,* 3 Grant (Pa.) 65; *Savery v. Sypher,* 7 Wall. (U. S.) 157; *Warren v. Hawkins,* 49 Mo. 138.

II. The legal and equitable titles were vested in Robinson by the purchase, at an open fair sale, there being no obligations on his part to purchase for his client. *Ward v. Brown,* 67 Mo. 468; *Drayton v. Drayton,* 1 Desau Eq. (S. C.) 567; *Stallings v. Foreman,* 2 Hill's Ch. 405; *Chorpenning's Appeal,* 32 Pa. St. 315; *Fisher's Appeal,* 34 Pa. St. 29; *Shakley v. Taylor,* 1 Bond C. C. 146; *Grayson v. Weddell,* 53 Mo. 537.

III. Subject to be defeated by the client electing to hold Robinson as trustee of the title for her benefit, but in the absence of such election, Robinson held the title for himself. *Ward v. Brown,* 87 Mo. 468; *Downey v. Girrard,* 3 Grant, 65; *Eshleman v. Lewis,* 49 Pa. St. 416.

IV. The right of election must be exercised within a reasonable time after the client knows of the purchase. *Ward v. Brown,* 87 Mo. 468; *Johnson v. Outlaw,* 56 Miss. 541; *Wade v. Pettibone,* 11 Ohio, 57; s. c., 14 Ohio 563.

V. This case is so like the case of *Ward v. Brown,* 87 Mo. 468, that it seems a waste of time to prepare a brief, except so far as it may refer the court to the facts and law as laid down by the Supreme Court in that case. It is admitted that the sale was a fair one in all respects, and that the land sold for the best price it would bring at that time. In *Burkey v. Daily,* 14 Mo.

App. 547, it is stated by the court that an attorney has a right to purchase at such sales, but on grounds of public policy he will be held to show, as against his client, that the sale was for a fair price. If this ruling is adhered to, the facts are admitted. An attorney has the same right to buy at a sale conducted by him for his client as any other person. *Grayson v. Weddell*, 53 Mo. 537. And with the exception that the client has an option for a reasonable time to elect to hold her attorney as her trustee in such purchase, the purchase is as valid against all the world as though purchased by a stranger. And in the absence of the client notifying her attorney within a reasonable time that she would take the land and pay the costs and the attorney's reasonable charges, no trust ever arose in the case at bar. *Ward v. Brown*, 87 Mo. 468.

VI. It is not worth while to examine authorities on the question of reasonable time, since the time was long enough to satisfy any authority which could be found. The authorities cited by plaintiff are based upon facts, establishing a trust by actual contract or by fraud. As in the case of *Edwards v. Gottschalk*, 25 Mo. App. 549, the defendant had agreed that he would purchase it for the plaintiff, and would hold for her—here there was some reciprocity. If the land had fallen in value below the bid, still the plaintiff could have been compelled to pay for it. And we submit that here is just the distinction : When, as in this case, the attorney has conducted the sale fairly, and bought at the best price the land would bring at the time, made a fair honest report to his client, and offered to convey on the payment of his just charges and expenses, and the purchase is without such contract as would enable him to compel his client to pay such charges against his will, then no trust arises by the mere act of the purchase, but the client has a right, within a reasonable time, to call on her attorney for a conveyance, and if she fails to do this, the client has no more right than a stranger.

ELLISON, J.—From the agreed facts set forth in the

statement of this cause, it appears that defendant has
not been guilty of any fraud on plaintiff, but, on the
contrary, his conduct has evidenced good faith through-
out.   It further appears that the land, though since of
greater value, brought the best ·price obtainable at the
sale.   It also appears that defendant informed plaintiff, in
May, 1876, that he had bid in the land, but would deed
it to her if she so desired, she, of course, paying the
expenses, costs, etc.   She replied to this letter, but sent
no money and only complained of the attorney fee ;.
neither did she give any directions as to what defendant
should do.   Defendant again wrote her, in June, 1876,
and though plaintiff received his letter she never
answered him.   In September, 1876, defendant again
wrote plaintiff expressing surprise at her not making
some arrangement about taking the land, and stating
that he would now only wait a reasonable time, and if
nothing was done he would keep the land himself.   No
answer was made to this, though plaintiff received it.
Defendant heard nothing from plaintiff for near five
years, when she wrote to him asking for the *return* of
her "papers."   It appears that plaintiff, though fully
informed of the condition of affairs and of the acts of
her attorney, never elected to take the land.   It is un-
doubtedly true that plaintiff could have elected to take
the land, as it had been purchased by her attorney, as
the result of legal proceedings prosecuted by her.   It is
also, doubtless, true that if he had sold the lands thus
purchased, after she elected to take them, or without
giving her an opportunity for election, she could hold
him for the proceeds as she seeks to do in this action.
But in order to entitle her to the property or its pro-
ceeds, she must elect to take it within a reasonable time.
*Ward v. Brown*, 87 Mo. 468.   That case fully covers the
principles applicable to this, and we regard it as con-
trolling, thus relieving us of the necessity of going into
a detailed examination of the authorities bearing on the
question.

The judgment is affirmed.   All concur.