Davis v. Kline.

DAVIS, *Appellant,* v. KLINE *et al.*

96 401
99 89
96 401
108 383
96 401
110 671
50a '17
96 401
76a 70

1. **Attorney and Client**: CONFIDENTIAL RELATION, WHEN CREATED. The relation of attorney and client is one of especial confidence, and the employment by one of an attorney to draw deeds of trust is of itself sufficient to create that relation.

2. ———: PURCHASE BY ATTORNEY OF OUTSTANDING TITLE. An attorney cannot buy in and hold, as against his client, an outstanding title to property about which he gave advice and upon which he drew deeds of trust for such client.

3. ———: ———. The evidence in this case held to show that plaintiff stands as a substitute for defendant's attorney, who was the real purchaser, and that the former takes nothing by the sheriff's deed.

4. **Practice**: EVIDENCE OF DECEASED WITNESS ON FORMER TRIAL. It is competent to show, on the second trial of a cause, what was the testimony of a witness, since deceased, on the former trial. This may be shown by reading from a bill of exceptions preserving the testimony, upon proof of the substantial correctness of the report of it, or it may be proved by any person who can swear to it from memory.

5. **Practice in Supreme Court**: REVIEW OF EVIDENCE IN EQUITY SUIT. The supreme court will not reverse the decree of the trial court in a suit in equity because of the admission of incompetent evidence, but will dispose of the case on the competent testimony.

*Appeal from Pettis Circuit Court.*—HON. JOHN P. STROTHER, Judge.

AFFIRMED.

*Samuel P. Sparks* and *M. A. Fyke* for appellant

(1) The bill of exceptions in the case was the best evidence of Asbury, the deceased witness' testimony on the former trial. It purported to contain all the testimony and it was error to permit the witness Gantt to

testify orally as to it. *Coughlin v. Haeusler*, 50 Mo. 126 ; *Franklin v. Gummersel*, 11 Mo. App. 307 ; *Halsey v. Sinsebaugh*, 15 N. Y. App. 486 ; *Fisher v. Kile*, 27 Mich. 454 ; 1 Greenl. Ev., secs. 163, 166 ; *Corby v. Wright*, 9 Mo. App. 5 ; *Jaccard v. Anderson*, 37 Mo. 91. (2) The acts and declarations of Kline were admissible, though made in the absence and without the approbation of his co-defendant and grantee, Logsden. For purpose of showing Kline's intentions they were part of the *res gestae*, a part of the conspiracy. *Holmes v. Braidwood*, 82 Mo. 610 ; *Gibney v. Marchey*, 34 N. Y. App. 304 ; *Jackson v. Cole*, 4 Cow. 589 ; *Norton v. Pettibone*, 7 Conn. 319 ; *Mastin v. Thomas*, 8 Gill. 19–29 ; *Jones v. Simpson*, 116 U. S. 608. (3) Knowledge on the part of the grantee of such fraudulent purpose of the debtor, may be shown by any circumstances tending to show participation in the designs of the latter, without proving the grantee's knowledge of particular acts and declarations of his grantor. *Holmes v. Braidwood, supra*. (4) A creditor cannot purchase the goods of his debtor at a price in excess of his debt, when he knows the excess so paid such debtor is by the latter to be placed beyond the reach of his other creditors. Such purchaser is a participant in the fraud of his grantor, whether his purpose be to aid him or not. *McVeigh v. Baxter*, 82 Mo. 518. (5) A voluntary conveyance, made by a debtor in embarrassed circumstances, is considered fraudulent and will be set aside at the instance of a creditor, without proof of actual fraud, where the debtor is afterwards unable to meet his debts existing at the time. *Bohannon v. Combs*, 79 Mo. 305 ; *Lionberger v. Baker*, 88 Mo. 447. (6) Any agreement made by an insolvent debtor with his assignee, by which the estate is to be held in trust to secure certain benefits for his family or himself, is fraudulent and void. Story Eq. Jur. sec. 380. (7) Kline was insolvent and could not, under the guise of securing the contingent liability of his grantee, Logsden, transfer more property than

was reasonably sufficient for the purpose. *McNichols v. Richter*, 13 Mo. App. 515; *Potter v. McDowell*, 31 Mo. 62–74. (8) The inadequacy of the price for which the plaintiff purchased the land at sheriff's sale cannot avail the defendants in this case. *Rinehart v. Long*, 95 Mo. 396.

*John Montgomery, Jr.*, for respondents.

(1) The testimony of the witness Gantt was competent. The bill of exceptions containing the testimony of Asbury, the deceased witness, was not the best evidence and the defendant was not bound to use it alone in proving what was the testimony of the deceased witness. It was only hearsay evidence at best (1 Greenl. Ev. sec. 163), and the testimony as preserved in the bill of exceptions was not competent except upon proof that the testimony as therein written was the substance of the testimony as deposed by the witness. *Scofield v. Railroad*, 94 Mo. 87; *Jaccard v. Anderson*, 37 Mo. 95. (2) The deeds of trust were founded upon a valuable consideration, being made to secure the defendant Logsden against his liability as security and endorser, and to pay certain debts which he assumed. (3) At the time of the execution of these deeds of trust Asbury was employed by the defendants as their attorney, and all the circumstances surrounding the parties, their condition and their objects, were made known to him. He advised them as their attorney and prepared the deeds of trust. This employment did not cease when that work was completed, but it continued and the purchase of the land by Asbury was a fraud on them and void as against their rights. He could not take advantage of them, but his purchase inured to their benefit. *Williamson v. Moriarty*, 19 Weekly Rep. 818: *Baker v. Humphrey*, 11 Otto, 500; *Smith v. Brotherline*, 62 Pa. St. 469; *Galbreath v. Elder*, 8 Watts, 92; *Van Epps v. Van Epps*, 9 Paige Ch. 241; *Bennett v. Austin*, 81 N.

Y. 332 ; *Fulton v. Whitney*, 66 N. Y. 554 ; *Hawley v. Cramer*, 4 Cowen, 739 ; Pomeroy Eq. sec. 738, pp. 196, 197, and sec. 960. Davis was not the purchaser. His name only was used by Asbury to cover up his fraudulent purpose and he holds whatever title he acquired, the same as though it stood in Asbury's name. The failure of Davis, when charged with fraud, to testify in the cause is a strong circumstance against him. *Mabary v. McClurg*, 74 Mo. 575 ; *Baldwin v. Whitcomb*, 71 Mo. 651.

BLACK, J.—This is a suit in equity to set aside a deed of trust on one hundred acres of land in Henry county. The court found the issues for defendants, and the plaintiff appealed.

John Kline, who resided in Warrensburg, Johnson county, owned two or three parcels of real estate at that place, which were incumbered by mortgages to the amount of about eighteen hundred dollars. This property and the one hundred acres of land in Henry county had an estimated value of about five thousand dollars. He owed other debts to various persons, amounting to three or four thousand dollars. Civil suits and criminal prosecutions were pending against him ; he was insolvent. On the eighth of June, 1875, and whilst his affairs were in this condition, he made a note for two thousand dollars, payable to Joseph Logsden, who was his father-in-law, and secured the same by a deed of trust on the Henry county land. On the same day, he made another note to Logsden for six thousand dollars and secured the same on all of the Warrensburg real estate.

Logsden says that these deeds of trust were made to save him harmless as the endorser for Kline, to protect him as security on certain appeal bonds, and to pay certain other debts owing by Kline. None of these agreements are set out in the deeds. Since the date of the deeds of trust, he has paid debts for Kline, including

the mortgage debts, to the amount of thirty-five hundred dollars. Other evidence tends to show that the primary object of the deeds of trust was to place the property out of the reach of creditors of Kline, and to save some of it for his family.

W. P. Asbury prepared these deeds of trust as the employed attorney for Kline and Logsden, was their adviser in the matter, and in this way became acquainted with Kline's affairs. He brought two suits against Kline, and recovered judgments in February, 1876, one in favor of Brockmire & Rankin for one hundred and seventy-six dollars, and the other in favor of Ossig & Harig for two hundred and six dollars. Acting for these judgment creditors, and as their attorney, he had the Henry county land sold on executions issued upon these judgments, and purchased the one hundred acres at the price of ten dollars, and had the deed made to this plaintiff. That sale was made on the twenty-first of April, 1876, and on the sixteenth of June, 1876, he caused the Warrensburg property to be sold under the same judgments; but Logsden appeared, took up the bids and paid Asbury the full amount of the judgments.

One of the defenses to this suit is, that Asbury was the real purchaser of the one hundred acres; that, having prepared the deeds of trust for Kline & Logsden as their attorney, he cannot maintain this suit. Asbury is dead, but his evidence on a former trial is in the record. The plaintiff Davis, though charged with fraud in the answer, did not appear at either trial, but his deposition was taken by defendant Logsden. Their evidence shows that they were brothers-in-law, that Davis was not at the sale and knew nothing about it. Asbury says he bought the land for Davis, and that the latter paid him the purchase price, ten dollars; but his account of the payment is confused and unreliable, and the plaintiff's account of this alleged payment is evasive. Davis, the plaintiff, says he gave Asbury general directions to buy

for him land that sold cheap, and there is no claim that Asbury had any authority from Davis to purchase this particular land. The circumstances all go to show that Asbury was the real purchaser, and that Davis is simply loaning the use of his name ; and such, we conclude, is the fact. The case must be treated the same as if Asbury had taken the sheriff's deed in his own name.

The relation of attorney and client is one of especial confidence. The employment to prepare these deeds of trust was of itself sufficient to create that relation. *Baker v. Humphrey*, 101 U. S. 494. Weeks says : "Counsel who has been consulted about a title to land will not be permitted to purchase an outstanding one, and set it up in opposition to his client. If he does, it enures to the benefit of the client." Weeks on Attorneys at Law, sec. 274. In *Smith v. Brotherline*, 62 Pa. St. 461, it is said : "A counsel or attorney, employed or consulted as such to draw a deed or an application for an original title for land, is in the line of his profession, and is precluded from buying in for his own use any outstanding title." Justice SWAYNE, for the court, in *Baker v. Humphrey, supra*, says : "It may be laid down as a general rule that an attorney can in no case, without the client's consent, buy and hold otherwise than in trust any adverse title or interest touching the thing to which his employment relates."

Asbury, having purchased this land under the judgments, his clients, the judgment creditors, might have claimed the purchase. *Ward v. Brown*, 87 Mo. 468. But they make no such claim ; so that the purchase of the one hundred acres stands freed from any question that might have been made had they claimed the benefit of the purchase. Speaking of the time at which these deeds of trust were made, Asbury says : "Kline said he was greatly in debt, or largely in debt, and he wanted to put his property in Logsden's hands, so that he would have something for his children." It thus appears that he not only prepared the deeds, but it is equally clear

that he was consulted as to the purpose had in view by the execution of the deeds of trust. The statute denies to an attorney the right to testify as to communications between himself and client, save by the consent of the client; yet the facts revealed to Asbury by reason of the confidence bestowed upon him are now brought forward and used against the client. If an attorney may not buy in and hold, as against his client, an outstanding title to property about which he gave advice, then he cannot, for his own benefit, be allowed to strike down the very transaction which he advised and put in writing for his clients. It matters not that he is attempting to show that the transaction was fraudulent in fact; nor does it matter that the facts are or can be proved by persons not disqualified to testify. The groundwork of the whole doctrine is, that the attorney cannot take advantage of the trust reposed in him. The plaintiff, who stands as a substitute for Asbury, can therefore take nothing by the sheriff's deed.

Asbury testified on the first trial of this cause, but died before the second trial. It was entirely competent to show on the second trial what his testimony was on the former one. This could be done by persons who heard his evidence. *Breeden v. Furst*, 70 Mo. 624. As his testimony was preserved in a bill of exceptions, it could be read therefrom, upon proof that the report of it in the bill was correct in substance. *Jaccard v. Anderson*, 37 Mo. 95; *Scoville v. Railroad*, 94 Mo. 86. It is true that the witness Gantt went further than was necessary to lay a foundation for reading the evidence from the bill of exceptions, and gave some of the details of the testimony of the deceased witness, but we see no objection to this. A bill of exceptions, when filed, is not the only evidence of what the deceased witness said. What he testified to may be proved by any person who can swear to it from memory. 1 Greenl. Ev., sec. 166. Even if incompetent evidence had been admitted, we would not reverse the decree for that reason only, but

would dispose of the case on the competent proofs, the case being a suit in equity and not an action at law.

The judgment is affirmed. RAY, J., absent; the other judges concur.