Aultman, Miller & Co. v. Loring.

---

AULTMAN, MILLER & COMPANY, Appellants, v. SAMUEL G. LORING, Respondent.

Kansas City Court of Appeals, May 30, 1898.

1. **Attorney and Client**: PURCHASER AT EXECUTION SALE: INFORMATION TO CLIENT: ELECTION: LACHES. The relation of client and attorney is one of confidence and an attorney purchasing at an execution sale in his own name holds the property subject to the election of the client to take it and should fully inform his client of the facts, and where he fails to do so the client will not be guilty of *laches* in making his election.

2. ———: LIMITATION: FRAUD. Where the attorney has failed to disclose the facts but rather concealed them the statute of limitation will not begin to run against the client until he has discovered the fraud.

3. ———: PURCHASING AT EXECUTION SALE: PERFECTING TITLE. Where at an execution sale an attorney purchases and afterward buys an outstanding title, such action will inure to the benefit of the client.

4. ———: ACCOUNTING: DIRECTION. Directions are laid down for an accounting between attorney and client where the former bought land at an execution sale and after perfecting the title sold at an advance.

*Appeal from the Daviess Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED (*with directions*).

HARWOOD & HUBBELL for appellants.

(1)   It is the duty of an attorney to tell his client the whole truth about any given litigation. Am. and Eng. Ency. of Law [2 Ed.], 332, 334.   (2)   When an attorney takes a note for collection, his employment, unless terminated by agreement with his client, lasts until that note is collected. 3 Am. and Eng. Ency. of Law [2 Ed.], 316, 317, 390, 318, 347, 471, 330, 328, 336.   (3)   An attorney purchasing at his client's execution sale is held in equity to purchase for his client, and any other title that he may afterward acquire inures to the benefit of his client.   Leisenring v. Black, 30 Am. Dec. 322; 5 Watts, 303; Weeks on Atty's, secs. 273, 274.   (4)   The statute of limitations did not begin to run until the fraud was discovered. Aultman, Miller & Co. v. Adams, 35 Mo. App. 503.

S. G. LORING for respondent.

(1)   This suit must have been brought at least within ten years after the cause of action accrued. Yet the plaintiffs' bill upon its face shows that they delayed twenty-one years after their alleged cause of action existed, and the only excuse they gave for this delay is the frivolous one that they "never learned the real facts until the —— day of February, 1896." Their pretended claim was stale and they gave no excuse for their laches. Bliss v. Prichard, 67 Mo. 183; Ward v. Brown, 87 Mo. 471; Wilber v. Robinson, 29 Mo. App. 165; Higgins v. Ins. Co., 41 Mo. App. 543.   (2)   Defendant, by

reason of his purchase, would not have held the title if the title had passed by the sheriff's deed, as trustee for plaintiffs, but only if plaintiffs, after said purchase, had elected to hold him as such, and this right of election must be exercised within a reasonable time. Ward v. Brown, 87 Mo. 471; Weldon v. Robinson, 59 Mo. App. 165. (3) At the best, as this suit involves the title to land, the ten year bar applies. Dunn v. Miller, 96. Mo. 335; Buren v. Buren, 79 Mo. 542; Ins. Co. v. Smith, 117 Mo. 297; Shelby Co. v. Bragg, 135 Mo. 301.

ELLISON, J.—This action is to enforce an accounting between plaintiffs and defendant. The decree in the trial court was for the defendant.

It appears from the record that plaintiffs reside in the state of Ohio, and have resided there during the time covered by this controversy. That defendant is an attorney at law residing in DeKalb county, Missouri. That some time prior to December, 1874, one W. W. Simons was indebted to plaintiffs on a promissory note then past due for $87, and interest thereon, which he had failed and neglected to pay. That plaintiffs employed defendant as their attorney to collect said note and that defendant on December 17, 1874, obtained judgment thereon for plaintiffs before a justice of the peace in DeKalb county for $100.75. That he caused an execution to be issued from the justice which was afterward returned by the constable *nulla bona*. That afterward, on March 5, 1875, defendant caused a transcript of such judgment to be filed in the office of the clerk of the circuit court for DeKalb county, and on the twentieth of April following he caused an execution to issue to the sheriff of said county from the circuit court thereof. That the sheriff levied the execution on a certain forty acres of land in said county as the prop-

STATEMENT.

erty of Simons, and afterward, on May 20, duly sold the same, the defendant becoming the purchaser for the sum of $18 and receiving a proper sheriff's deed therefor. Shortly afterward, on July 2, 1875, plaintiffs wrote to defendant asking him to advise them by return mail why the note had not been paid; and that if it was in judgment to give them the date and amount thereof. To this inquiry the defendant wrote the following answer on the bottom of plaintiff's letter of inquiry:

"I obtained a judgment before J. S. Stevens, J. P., for one hundred and 75–100 dollars, December 17th, 1874; filed a transcript of that judgment in the office of the circuit court, March 5th, 1875. I have been able to satisfy the costs in the case, but nothing more.
"Yours, S. G. LORING."

Nothing further passed between plaintiffs and defendant until five years thereafter when plaintiffs, on August 26, 1880, addressed defendant another inquiry as to the note. This inquiry defendant answered on September 15 by the following letter:

"OFFICE OF S. G. LORING, PROSECUTING ATTORNEY, DEKALB COUNTY.

MAYSVILLE, Mo., Sept. 15th, 1880.
"*Aultman, Miller & Co., Akron, Ohio.*

"GENTLEMEN SIRS:—Your favor of August 26th inst. received. Very soon after I recovered the judgment I caused an execution to issue to our constable, who returned the execution *nulla bona*. Then an execution issued to the sheriff, who found property sufficient to satisfy the costs, but no more. Soon after, Simons skipped the state between two days and went to Iowa, where he now resides—at Ottumwa is the place of his residence, as I am informed.

"Most respectfully, your obedient servant,
"S. G. LORING."

The matter rested at this about sixteen years, when, in February, 1896, plaintiffs learned through other parties that defendant had purchased the land sold under plaintiff's judgment, taking a deed in his own name and that he afterward, in the year 1890, sold it for $700.

The record shows that at the time defendant purchased the land it was in the possession of one Harmon, perhaps as tenant of Simons, at any rate when defendant made claim to him of title by reason of his sheriff's deed on the execution against Simons, he attorned to defendant. But it seems that Simons, prior to plaintiff's judgment against him, had made a deed to the land to one Klien (this, it is fair to say, was regarded as a fraudulent deed) and that Klien quitclaimed to Harmon in 1878. Harmon then began to disavow his tenancy to defendant and the latter brought an ejectment suit against him which resulted in a judgment in 1884, in defendant's favor in the circuit and supreme courts. 84 Mo. 126. During the pendency of this litigation, suit was begun against Simon and Harmon for $3 or $4 delinquent taxes on the land, which resulted in a judgment and a sale of the land, defendant again becoming the purchaser for $180. Defendant then instituted suit to quiet title and was successful therein. He then sold the land as above stated.

Defendant by his answer admitted his employment to collect the note, that he obtained judgment thereon and wrote the two letters referred to above and that he sold the land for $700. He denied all other allegations and set up the statute of limitations.

It is a proposition nowhere denied that the relation of client and attorney is one of especial trust and confidence in the attorney. Davis v. Kline, 96 Mo. 401; Eoff v. Irvine, 108 Mo. 378. When therefore an attor-

Aultman, Miller & Co. v. Loring.

ney buys property at an execution sale in his own name he will hold the property subject to the election of the client to take it, and if the client so elects, in a reasonable time, he will hold it in trust for the client. Weeks on Attorneys, sec. 274, p. 556; Wilbar v. Robinson, 29 Mo. App. 157; Ward v. Brown, 87 Mo. 468; Bliss v. Prichard, 67 Mo. 181; Johnson v. Outlaw, 56 Miss. 541. In order to exercise an election the client must, of course, have knowledge of what the attorney has done. And when the client is so situated that he has not the opportunity to acquire such knowledge, he has a right to depend upon information from the attorney, and if the attorney withholds such information, or renders false or misleading information, the necessity or duty of the client to elect does not arise. In this case the plaintiffs residing in a distant state and having no other representative than defendant, it became the latter's duty to notify them of his purchase of the land for himself. His duty was not discharged to plaintiffs, as his clients, by merely informing them that "property" had been sold at sheriff's sale under their judgment, and only brought the costs. In such state of information plaintiffs would have a right to expect that defendant was advising them without personal and selfish interest; that he was acting for them and not for himself. He should have disclosed to them that he had become the purchaser of the land in controversy at the sale, so that they might have become aware of his interest and had an opportunity to determine what they ought to do for their own protection. In other words, so that they might have exercised their own judgment and perhaps sought independent information, instead of depending on his, as a supposedly disinterested person.

But defendant contends that he did, on the day

*[margin note: ATTORNEY and client: purchaser at execution sale: information to client: election: laches.]*

of sale or next day, inform plaintiffs, by letter of his purchase in his own name and that he made offer to turn the land over to them on payment of the costs and his fee of $25. If he did so inform them, then there is no doubt that plaintiffs are barred of this action, since they have been guilty of laches (apart from the statute of limitation) in asserting their claim. Ward v. Brown, *supra;* Wilbur v. Robinson, *supra*. They would also be barred by the statute of limitation, since the time limited by the statute has long since expired.

We are however of the opinion that the evidence leads to the conviction that defendant did not inform plaintiffs of his purchase. The testimony of two of plaintiffs' agents having in charge their correspondence on this subject, is emphatic that they did not receive such a letter; that they only received the two letters above set forth. It seems clear to us that the internal evidence which these letters bear, together with the circumstances, makes clear that defendant is mistaken in his statement in testimony that he had written a letter to plaintiffs the day of the sale or the next day; informing them of the sale of the land; of his purchase and the price paid and that it was for them on payment of costs bid and his fee. If he wrote such a letter, it was on the twentieth or twenty-first of May, as the former date was the day of sale. No acknowledgment was made by plaintiffs of the receipt of such a letter; on the contrary, a few weeks after the time of writing the letter (as claimed by defendant) plaintiffs wrote him the letter of inquiry set forth above, asking why the note was not paid and if he had put it in judgment. Defendant answered this inquiry and made no reference to a former letter, but stated he had obtained judgment and that he had "been able to satisfy the costs in the case and nothing more." It would seem the

most natural thing for defendant to do, if he had only recently before written them a full explanation, to have referred to that fact and expressed some surprise at their asking him to give information of what he had so recently written them in detail.

Again, some five years afterward, on August 26, 1880, plaintiffs addressed him a further inquiry and he answered, September 15, without making known that he had purchased the forty acres, or that any *real estate* had been sold. He states the sheriff "found property sufficient to satisfy the costs, but no more." If defendant had written the first letter claimed in which he gave plaintiffs detailed information, is it not strange that he would not have been spurred to at least refer to it by these letters of plaintiffs in seeming ignorance of it? And if he had told of his purchase, and of his offer to release to them, is it not again strange that he would not have asked why they had not informed him of what they wished to do in the premises?

Concluding therefore that defendant did not inform plaintiffs of his purchase of the land, they had no opportunity to elect and they have not been guilty of *laches* in bringing this action.

As before stated, defendant has pleaded the statute of limitations. More than the statutory period for bringing the action has elapsed since defendant's purchase of the land. And the plea of the statute must be held good unless the time has been arrested or stayed by the conduct of defendant. Ordinarily it is the duty of any one to look diligently after his own affairs and he will be chargeable with neglect to do so, even to the extent of applying to him the statutory bar of limitation. But, as we have already seen, it was defendant's duty, under the circumstances here disclosed, to have informed plaintiffs of his action; and that it was his

——: limitation: fraud.

duty in answer to their inquiries to have given them full information of his relation to the sale of the land. He did not do so. On the contrary, it must be conceded that his letters contained no suggestion that they had a claim against him, or that there was anything which they could do in their own interest. The letters were an effectual concealment of the situation as it existed and has now developed. So that whether such concealment was fraudulently intended or not, its effect upon plaintiffs was the same. The principle announced in an opinion by Judge Gill in Aultman, Miller & Co. v. Adams & Sherlock, 35 Mo. App. 503, finds direct application here. The authorities were carefully examined and commented upon in that case and we need do no more than refer to it here as a guide to the conclusion we have reached, viz.: that defendant's conduct toward plaintiffs stayed the running of the statute against them. The statute will not begin to run until a discovery of the fraud. Kilbourn v. Sunderland, 130 U. S. 505.

In stating the judgment which would be rendered the trial court said that conceding the facts to be as set up and claimed by plaintiffs, the judgment would be for defendant. This shows that the court entertained the view either that the claim was stale, or that limitation was a bar, or that the purchase by defendant at the tax sale conveyed the title to him as against any interest of plaintiffs. We have already stated our conclusion as to staleness of claim and statute of limitations and it only remains to consider those matters relating to defendant's perfecting the title which had its origin in his purchase at the execution sale. It ought to be clear that if defendant can not be allowed to secure a title to himself of land sold on his client's judgment and execution, that he could not be allowed

to secure such title by the indirection of buying up other titles. And so it has been held that if an attorney becomes aware of a defect in his client's title to real estate which he has been employed to examine, his purchase of an outstanding title will inure to the benefit of his client. Weeks on Attorneys, secs. 277, 279, pp. 562, 563; Eoff v. Irvine, 108 Mo. 378.

We therefore hold that the purchase at the tax sale made by defendant and his other proceeding to perfect title must be held to be for plaintiffs' benefit.

It necessarily follows from what has just been written that for the profits made by defendant in the lands, he must account to plaintiffs. It is said in Weeks on Attorneys, sec. 271, p. 549: "If the attorney for a judgment creditor purchases goods sold on an execution issued upon the judgment, and thereafter sells them at an advance, his client may claim and receive the profits so realized." And this, as just intimated, is but the result of the principles which we have shown govern the relation which public policy has established between attorney and client.

The prayer of plaintiffs' petition asks for an accounting and for a judgment of $750 with ten per cent compound interest (without stating from what date) and for "all other and proper relief."

*——: accounting: direction.* Proceeding to render the relief to which we conceive plaintiffs entitled, we will reverse the judgment and remand the cause with directions to enter judgment for plaintiffs on the following basis, viz., allow defendant $18 paid for the land and $2.50 for the deed on May 20, 1875, with six per cent simple interest to the tenth of December, 1890, when defendant sold the land for $700 to Danner. Allow him $180 paid for the tax deed April 6, 1881, with six per cent simple interest to the date of sale to Danner. Allow plaintiffs the $700 received by defendant for the

land December 10, 1890, and $80 per year for five years shown to be value of rents, with six per cent simple interest on each separate year's rent up to sale of the land. From the total of these sums allowed plaintiffs, deduct the sums allowed defendant and add to the balance thus found in plaintiffs' favor six per cent simple interest from December 10, 1890, to the day judgment hereby directed is entered. All concur.