### B. FRANK MEBANE v. ROBERT BROADNAX ET AL.

(Filed 19 April, 1922.)

**Attorney and Client—Trusts and Trustees—Attorney Deriving Adverse Title to His Client.**

> The relation of an attorney to his client in regard to the subject-matter of litigation is one of great trust and confidence, and he may not acquire a title thereto or interest therein adverse to his client, or to his prejudice, without his client's consent, even though the attorney may have received no fee and intended no fraud; and where, in violation of the confidence of his client thus imposed, he acquires such title or interest, he will be decreed to hold it in trust for him.

APPEAL by defendants W. R. Dalton and Mrs. Robert Broadnax from *Long, J.,* at November Term, 1921, of ROCKINGHAM.

This was an action originally begun against Robert Broadnax and wife and T. H. Chumley, and the complaint, filed in January, 1919, alleged that the plaintiff was entitled to a deed against Robert Broadnax and his wife for a tract of land of about 400 acres, known as "Hunter's Delight." The original plaintiff, Mebane, contended that he was entitled to the deed by virtue of a certain paper-writing, referred to as an option or contract to convey, and prayed that the court would require the defendants Broadnax and wife to convey said land to him and not to their codefendant, T. H. Chumley, who had agreed to purchase the land from them. The defendants, Broadnax and wife and Chumley, filed an answer denying that the plaintiff was entitled to a deed for the land, and the defendant W. R. Dalton, now a defendant in this action, signed the pleadings as counsel for T. H. Chumley and Broadnax and wife. In May, 1919, he had himself made defendant to the action, and set up that he had purchased the land from Broadnax and wife and held a fee-simple deed to the same.

On 21 June, 1921, T. H. Chumley, a defendant in this action, by a leave of the court filed an amended answer through his present counsel, stating that he was advised that the defendant W. R. Dalton, while acting as counsel for him, had purchased the land for himself and not for his client, T. H. Chumley; that as he had purchased it for his client,

he claimed the conveyance for himself upon the repayment to W. R. Dalton of the money and obligations assumed by him in the purchase, and that if he had not purchased it for his client, T. H. Chumley, that he be declared a trustee to that effect and required to convey the property, upon reimbursement by said T. H. Chumley.

The case was tried at a former term and the court determined that the original plaintiff, B. Frank Mebane, could not sustain his cause of action. This left the contest between T. H. Chumley and his former counsel, the defendant W. R. Dalton. At November Term, 1921, the issue between Chumley and Dalton was tried, and the jury found that defendant had purchased and held the land as trustee for the use and benefit of his former client, T. H. Chumley, and a decree was entered accordingly.

The following appeared to be the facts of the controversy between Chumley and Dalton: In August, 1918, Broadnax and wife agreed to sell the tract of land in dispute to T. H. Chumley, who had been a tenant thereon for a number of years. Agreeing upon the price of $10,000, one-half to be paid cash and the balance in two equal installments, one and two years, the party went to Wentworth to execute the deed and the mortgage to secure the balance due. They employed Dalton, told him to look up title and prepare the papers. Mr. and Mrs. Broadnax were to pay the fee for these services. All parties to the agreement were present and agreed in placing the matter in Dalton's hands. Upon examination of the record, he advised the defendants Broadnax and Chumley that the title was clear.

After leaving the courthouse, P. W. Glidewell, who was acting as attorney for B. Frank Mebane, approached Dalton and Chumley and stated to them that Mebane claimed this land and that Broadnax did not have a right to sell it, and Mebane intended to bring suit to prevent the sale. Dalton stated to Chumley that he need not bother about that, as he, Dalton, would look after the matter. Mr. and Mrs. Broadnax and Chumley then went with Dalton in an automobile to an attorney's office in Reidsville and Dalton began the preparation of the deed and mortgage for the transfer of the property to Chumley. At this juncture, an officer served the summons in the action by Mebane upon Broadnax and Chumley. Dalton then stated to Chumley that nothing more could be done in the matter of the sale until the litigation was out of the way; that he would represent them and file the proper answer.

The defendant Chumley is an illiterate man, and cannot read or write except to sign his name. Shortly thereafter the defendants Dalton and Broadnax started negotiations, without the knowledge of Chumley, whereby Dalton purchased the land from Mr. and Mrs. Broadnax and took a fee-simple deed to himself. To protect himself he entered into a

contract with Broadnax on 26 December, 1919, in which the terms for the payment of the land are more favorable than those which had been agreed upon between Broadnax and Chumley, and, in addition, Mr. and Mrs. Broadnax agreed to hold the said Dalton harmless against any adverse judgment that might be obtained in the pending action and this paper was deposited with the president of the bank in Reidsville, of which Dalton was counsel and in whose building he had his office.

Dalton did not deny that he did not inform Chumley of his negotiations with Broadnax and wife, and Chumley relied solely upon Dalton as his counsel, and did not engage other counsel until he learned many months afterwards that Dalton had taken a deed to the land, which he thought had been done to protect him against Mebane, and did not understand that it was taken by Dalton on his own behalf; thus defeating his own chances to get the land.

At the time of the conclusion of the litigation with Mebane the land was worth from $13,000 to $15,000, and still is. T. H. Chumley has a contract to sell the land for $13,000, and his complaint is that he should have this profit of $3,000 and not his counsel. Dalton knew nothing of the value of the land and the opportunity of profit in its purchase until the matter was called to his attention in his employment by his client, T. H. Chumley.

The jury found in response to the issue that Dalton purchased the land in question, and now holds the same, as trustee for T. H. Chumley and judgment was entered accordingly. Appeal by defendants.

*A. L. Brooks and J. R. Joyce for T. H. Chumley.*
*Manly, Hendren & Womble and W. R. Dalton for Mrs. Broadnax.*
*R. C. Strudwick and W. M. Hendren for W. R. Dalton.*

CLARK, C. J. The obligation resting upon the attorney by virtue of relationship of client and attorney in such cases as this is thus stated in *Baker v. Humphrey*, 101 U. S., 494: "It may be laid down as a general rule that an attorney can in no case, without the client's consent, buy and hold otherwise than in trust any adverse title or interest touching the thing to which his employment relates. He cannot in such way put himself in adverse position without this result. The cases to this effect are very numerous, and they are all in harmony." This opinion contains a very clear statement as to the high duties and responsibilities of an attorney to his client.

In 2 R. C. L., 970, the rule is thus stated: "It is well established that a purchase by an attorney, without the consent of his client, of an interest in the thing in controversy, in opposition to the title of his client during a litigation concerning the same, is forbidden, because it places

him under temptation to be unfaithful to his trust. It is contrary to the policy of the law, and also contrary to the principles of equity, to permit an attorney at law to occupy at the same time, and in the same transaction, the antagonistic and wholly incompatible position as adviser of his client concerning a pending litigation threatening his title to the property and that of the purchaser of such property in opposition to the title of his client. All such purchases, therefore, inure to the benefit of the client."

In *Bucher v. Hohl,* 199 Mo., 320; 116 Am. St., 492, the client had consented to a decree prepared by counsel, and 10 years afterwards, and after a third party had acquired title to the property, she sought to have it avoided and the counsel charged as trustee of the property acquired under it and the Court thus said: "The evidence shows only a case of implicit trust and confidence in her attorneys, and if she acquiesced in that decree it was because her attorneys told her that it was the best that could be done for her. Under those circumstances her attorneys cannot avail themselves to their advantage, and to her disadvantage, of her acquiescence; as to that, she is not estopped in claiming her own."

Such conduct is condemned by the Canons of Ethics, both of the American and State Bar Associations, art. 10 of the latter providing: "The lawyer should not purchase any interest in the subject-matter of the litigation which he is conducting."

In 6 Corpus Juris., p. 682, sec. 208, it is clearly stated as follows: "A client has the right to treat all acts of his attorney in any matter intrusted to him as done for his benefit. Equity and public policy are opposed to an attorney deriving any advantage in relation to the subject-matter involved, which is obtained at the expense of the client, even though there is no actual fraud on the part of the attorney. It results that in all cases where an attorney purchases property involved in litigation or any other property connected therewith, obtaining it under a special advantage in consequence of knowledge or information acquired through his client, or in the conduct of the case, his client may elect to treat him as a trustee for his benefit, and compel him to account for all profits, or to convey to him the property, subject only to a lien for his services and expenditures. An attorney cannot make use of any knowledge acquired by him through his personal relations with his client to promote his own advantage, but in every such case will be conclusively presumed to be acting for his client's benefit."

The authorities are numerous and all to the same effect. In *Crocheron v. Savage* (N. J.), 23 L. R. A. (N. S.), 679, the Court said: "It is not necessary to find that the attorney was guilty of an intentional wrongdoing. The reason why he did not disclose the material facts upon which we have commented is not important. The fact that he did not

disclose them is sufficient. The law looks on transactions of this kind between an attorney and his client with suspicion, and will not permit a conveyance to the attorney to stand unless the attorney demonstrates the entire good faith of the transaction. It requires him to be absolutely frank and open with his client, to disclose every fact of which he has knowledge, and, as well, any professional opinion he may have formed, which could in any way affect the client in determining whether or not to make the conveyance."

In *Roby v. Colehour,* 135 Ill., 300, it was held: "There can be no acquiescence or ratification of such purchase, unless the client at the time of the alleged ratification is aware of the nature and extent of his actual rights, or that the advice of his attorney was incorrect."

This Court, in *Gooch v. Peebles,* 105 N. C., 426, in which the counsel contended that his employment was only in a limited capacity, held that his liability was complete responsibility, and that it made no difference that no fee had been paid, the Court saying: "This cannot alter the case." In stating the duties of attorneys, the Court said: "He is an officer of the courts in which he may practice, and occupies a *quasi-*official relation to the public, and when he assumes the duties of attorney to his clients one of these, undoubtedly, is to communicate to his client any fact within his knowledge relative to the business about which he is employed that it may be important for the client to know; and having once assumed the relation of attorney to client, he cannot terminate it at his pleasure, and without notice to his client, so long as anything remains to be done about the matter in which he is so employed."

The Court further held in that case that actual fraud was not necessary to compel an accounting on the part of the attorney, saying: "It was not necessary that there should have been any actual fraud in the transaction, but the rule which forbids it rests upon the broad principle of public policy which precludes persons occupying these fiduciary relations from representing conflicting interests that may tempt them to disregard duty, and lead to injury on one side or the other"; and cited with approval Weeks on Attorneys at Law, sec. 258: "An attorney employed, or consulted as such, to draw a deed, or an application for an original title to land, is precluded from buying for his own use any outstanding title. In such case, the relation is confidential, and whether he acts upon information derived from his client or from any other source he is affected with a trust. The rule is on the ground of public policy, not of fraud, and prevails, although the attorney be innocent of any intention to deceive and acts in good faith."

In *Lee v. Pearce,* 68 N. C., 76, *Chief Justice Pearson,* in discussing the doctrines of our law, and the burden of proof, applicable to fiduciary relations, says that "One of these relations is attorney and client in

respect to the matter wherein the relationship exists," and that any transaction had between them affecting the subject-matter of the trust raises a presumption of fraud as a matter of law, to be laid down by the judge as decisive of the issue, unless rebutted.

This latter case has been very recently quoted with the fullest approval in *Stern v. Hyman,* 182 N. C., 424, in which this Court says: "The able opinion in this case by *Chief Justice Pearson* laid down the eternal principles of equity and fair dealings, from which this Court has never deviated"; and added that in that case upon the evidence of the counsel himself "The judge should have held the alleged contract, if made, to have been void as a matter of law."

In this case the court might well have instructed the jury that upon the defendant Dalton's own showing the relation of trustee existed, and that he could not acquire and hold the land in dispute adverse to his client, the plaintiff Chumley. The court, however, submitted the question to the jury, who have rendered a verdict against the defendant and in favor of the plaintiff.

There must always be the most absolute good faith, *uberrima fides,* on the part of any attorney towards his client. There can be allowed no suspicion of self-serving on the part of the attorney in any dealings with his client. The court will not permit that

*"Self the wavering balance shake."*

If there has been profit made for himself by counsel out of the relationship contrary to the duty that his knowledge and his skill must be used solely for the benefit of that client, the court will always set aside the transaction, or decree that the benefit which the attorney has reaped must be held in trust for the benefit of the client, though no fee may have been paid by the client and no fraud was intended by the attorney.

The decree in this case, made in accordance with the verdict, is approved.

No error.