CATHARINE V. TAYLOR v. MARY T. YOUNG.

*Attorney and client—Notice to client—Relation of trust—Attorney's lien—Fraud on client's rights—Pleadings.*

1. Notice to an agent of the condition of the title to land which he buys for his principal is notice also to the principal, whatever the latter's actual knowledge may be on the subject.

2. Where the attorney of a judgment creditor bids off in his own name an undivided interest in lands upon which he has levied execution, and which the client desires to obtain, he holds such interest for his client's benefit and must release it on demand; and if he refuses, the client can hold him as a trustee and require him to account or compel him to convey.

3. An attorney's lien will not attach to land which the judgment creditor's attorney bids off at execution sale in his own name and against his client's interest and protest, and without making any payment in his own behalf.

4. It is in fraud of a client's rights for the attorney, after bidding off an undivided interest in land at a sale on execution in the client's favor, to sell such interest before the equity of redemption has expired, to the execution debtor, and to bring about such sale on the ground that it would be to the buyer's interests as against his client.

5. An attorney claiming a lien against his client is bound to have its amount determined and to give the client an opportunity to pay it and obtain a release; and it is in fraud of the client to sell such lien to the adverse party without giving the client an opportunity to get rid of it.

6. Where the prayer of a bill is broad enough to sustain the relief asked for and the proof and pleadings warrant it, no statements in the bill that are not of controlling force will be allowed to defeat it.

Appeal from Oakland. (Stickney, J.) Jan. 22.—April 29.

BILL to set aside deed. Defendant appeals. Affirmed.

*Baldwin, Draper & Jacokes* for complainant.

*Junius Ten Eyck* for defendant appellant.

SHERWOOD, J. The bill in this case is filed to set aside a deed made to defendant, and to confirm the title of complainant to the land mentioned therein. The parties live in the state of New Jersey and are cousins by marriage. It appears that defendant's husband, Jacob Young, owned eighty acres of land in Oakland county and at the same time owed the complainant $2324.25, for which she obtained a judgment in the Oakland county circuit court on the 23d day of September, 1878, and which she caused subsequently to be levied upon the above-mentioned land, and which was sold, under an execution issued upon said judgment, on the 30th day of April, 1881, to complainant and Warren N. Draper for the sum of $2730.60. Mr. Draper resided at Pontiac, and was the attorney for complainant in the suit against Young, and her solicitor in a chancery suit to enable her to properly and safely enforce her levy under the execution sale. The complainant had an agent to look after her business at Pontiac, and in Oakland county. He was her brother-in-law, Conrad S. Taylor, and lived in Rochester, in said county of Oakland. It appears from the record that he looked after the suits for the complainant, and employed Mr. Draper to prosecute them, was present at the sale of the property on the execution, and objected to Draper's bidding off the property in his name. On the 24th day of March, 1882, Draper conveyed the interest he obtained in the property under said sale, and which defendant claimed to be an undivided half interest therein, to the defendant. This he did, so far as the record shows, without the knowledge or consent of the complainant, and without any consultation with her agent, C. S. Taylor; and when afterwards consulted about the transaction, claimed that the only interest he had in the premises was a claim in the nature of a lien for the fees the complainant was owing him, and for which he had never asked complainant's agent, neither had he done more than send to complainant by letter a statement of the amount of what his charges would be.

The record further shows that in the chancery suit Junius Ten Eyck, of Pontiac, was solicitor for Mrs. Young, and acted for her in making the purchase of Mr. Draper's interest in the land; that the negotiations were all made with him. Mrs. Young, however, avers in her answer to the bill that she bought Draper's interest in the land in good faith, and paid him therefor $550; that she knew nothing of his interest therein being only a lien, or that he only held the land in trust for Mrs. Taylor, the complainant. Draper testifies that at the time he bid off the property he executed a paper, and caused it to be delivered to Mrs. Taylor, but the record does not otherwise show that she ever saw it or knew anything about it. The following is a copy of the paper:

" This is to certify that the property this day deeded to Catharine V. Taylor and Warren N. Draper, by the sheriff of Oakland county, is the property of Catharine V. Taylor; the interest of Warren N. Draper therein being in the nature of a lien for professional services and moneys advanced, or for which he has become liable on said Catharine Taylor's account.
*April* 30, 1881.                    W. N. DRAPER."

Mr. Draper further testified that at the time he made the sale to Mrs. Young the equity of redemption on the sale of the land to him had not yet expired, and Mrs. Young's tenant was then in possession of the property, and that he (witness) told Mr. Ten Eyck the interest he had in the property; that he had bidden off the property in the name of Mrs. Taylor and himself for the purpose of securing his fees and charges; that he had not and did not claim to have any other interest in the premises. He further says:

" I told him I wanted to get the money out of it that I had in it; furthermore, that it was an advantage to Mrs. Young to acquire the interest which I had in it, from the fact it would enable them to prolong their occupancy of the property, as the equity of redemption would soon expire. I had several different conversations with Mr. Ten Eyck, but they were all to the same effect. He agreed with me that it would be to their interest to purchase it, and said that he would advise them to purchase it. At Mr. Ten Eyck's suggestion

they did purchase my interest in the property. I conveyed the land according to Mr. Ten Eyck's direction. My charge against Mrs. Taylor was $500. She resided in New Jersey at that time. She was not present at the sale and I never saw her."

The testimony on the part of complainant tends to show that the services of Mr. Draper, claimed for, were worth not more than $350, and that her agent, Mr. Taylor, had paid him eighty-five dollars; that before bringing this suit the complainant tendered to the defendant $350, and a deed for the latter to execute to the former, conveying to her the land; both of which were refused by the defendant. The case was tried before Judge Stickney, at the Oakland circuit, upon pleadings and the proofs taken, which were very brief, and a decree rendered requiring the defendant to release her interest in the land to complainant. We think this decree was correct.

In whatever Mr. Ten Eyck did he acted as the agent or attorney for Mrs. Young. Indeed, there is nothing in the record upon which to base a pretense to the contrary. Notice to him of the interest claimed by Draper at the time Mrs. Young made her purchase and took her deed through the negotiations of Mr. Ten Eyck, was notice to her, and she is clearly bound by it, no matter what her actual knowledge may have been upon the subject. The testimony in the case, the relations of the parties, and all the circumstances, strongly tended to show, we think, that Mrs. Young had information at the time she received her deed of the nature of the interest Mr. Draper claimed in the premises.

The case discloses a very singular transaction under the circumstances. There is no question of the relation of attorney and client existing between Mrs. Taylor and Mr. Draper at the time he bid off the property, and there is no evidence that it had ceased when he made his deed to Mrs. Young. The equity of redemption had not yet expired, and the sale he procured to be made of the premises upon the execution had not yet been perfected by obtaining the proper deed upon such sale. While occupying such a position the law watches and scrutinizes very closely all acts of the attorney relating

to his conduct with his client's business and property. He can do no act prejudicial to his client's interests with impunity, unless it comes through error of judgment, in an honest, intelligent effort made in good faith to protect or secure such interests. The relation of attorney and client is one of special confidence and trust, carrying with it many times great influence. " There are few of the business relations of life involving a higher trust and confidence, * * * or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice ; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it." *Stockton v. Ford* 11 How. 247 ; Perry on Trusts § 202.

It is also said: "It is against the policy of the law that attorneys should obtain interests in litigated claims, and exercise their office under such influence of gain. In all cases the burden is upon the attorney making the purchase of a client to vindicate the transaction from all suspicion," and if the attorney cannot produce evidence that puts the transaction beyond reasonable controversy, it will be set aside or he will be regarded as a trustee for the client. It has also been held that " an attorney having a lien or an execution in favor of his client could not buy in land of his client at a sale thereof on execution." Neither can he be allowed to so act in the absence of his client, and without his consent concerning it, that he may derive an advantage at the expense of his client. See authorities cited. It is held in Iowa that the application of this rule forbids the attorney to purchase, against the interest of his client, property sold in the course of litigation in which he is retained ; and such sales will be held void, or the attorney will be held as the trustee of his client and required to account as such. *Harper v. Perry* 28 Iowa 58. There can be no doubt that under the purchase made by Draper, while acting as her attorney, whether the bid was in his or her name, the purchase was hers and not

the attorney's, and it was his duty to release the property to her, if bid off in his name, at any time she might request it, and in case he refused, it was optional with her to hold him as her trustee, and require him to account as such therefor, or compel him to convey to her.

It is unnecessary to decide whether or not the lien claimed would attach, had the property been bid off in the names of both client and attorney (as in this case) with the knowledge and consent of complainant.   The testimony shows that Mr. Taylor, the agent of the complainant, was present at the sale and objected to Draper bidding the land off in his own name, and it very clearly appears he paid nothing for it.   This would be sufficient to prevent the claimed lien, which could not be created against the client's consent in this way.   But this is not the worst feature the case presents upon this record.  After this claimed lien was established as pretended, if in good faith it was relied upon by the attorney, it was his duty to have the extent of his lien settled with his client, and after the business was concluded, give his client an opportunity to pay the same and obtain a release from him. This was not done, but, on the contrary thereof, before the business was concluded, and without ever having requested a settlement or payment of his demand, and without knowing that the notification he claims to have sent his client ever reached her, and without any interview with his client's agent, who lived very near the attorney, he not only proposed to sell his pretended lien to another, but to one of the very persons with whom his client had the litigation in which he claims to have rendered the services, the charges for which constitute the alleged lien, and urged the purchase by such person for the reason that it would advance interests adverse and prejudicial to his client's rights.   This was more than a failure to keep good faith with complainant.   It was a fraud upon her just rights, and to allow a lien to prevail established through means so abhorrent to the fundamental principles of equity would be a perversion of the law, rather than a proper administration of it, and would in this case be

helping the defendant to reap the benefits of the fraud thus perpetrated.

We have carefully noted the ingenious argument of counsel for defendant, based upon certain statements contained in the bill. But these statements will not be allowed to control in a case like this, so long as the prayer of the bill is sufficiently broad to admit of granting the relief to which complainant is properly entitled under her pleadings and proofs.

The decree of the circuit judge must be affirmed with costs.

The other Justices concurred.