MARTHA V. BUCHER, Appellant, v. GEORGE HOHL et al.

Division One, November 21, 1906.

1. **ATTORNEY AND CLIENT:** Lands Acquired by Attorney: Voluntary Conveyance: Divorce: Summons by Publication: Alimony and Sale. In 1881 a husband and his wife, for an expressed consideration of $2,700, conveyed 120 acres of land to her sister, and such sister for the same expressed consideration, conveyed the land to the wife, both conveyances being warranty deeds. Later he brought suit to set aside the deeds, and at the same term another suit for divorce from her. These suits he afterwards dismissed, abandoned her, left the State, and in 1884, through the same attorneys who brought his suits, she brought a suit for divorce, alleging that her husband was a non-resident, the summons being by order of publication. He made default, and she was granted a divorce, and by way of alimony one-half of the same land was awarded to her, the other half being awarded to him. Commissioners were appointed, and 75 acres, the land in suit, were set off to him, but he never appeared to take possession. The same year a monetary judgment was rendered against him in the circuit court, and execution was levied on the 75 acres, and at the sale her attorneys became the purchasers, and subsequently sold the land to her brother-

in-law and in payment received a mortgage note; which they now hold. They and he are defendants in this suit to quiet title. *Held,* that the attorneys could not acquire title to her property under these circumstances, and whatever interest they hold therein, she is entitled to have back from them, unless she is estopped by acquiescence in the alimony decree, or barred by laches or by limitations, or the brother-in-law is an innocent purchaser for value.

2. ————: ————: **Alimony in One's Own Land: Acquiescence: Estoppel.** Where the evidence shows a case of implicit confidence and trust by the female client in her attorneys, in the divorce suit in which one-half of her own lands were awarded to her as alimony and the other half to her defaulting husband, which half so decreed to her husband her attorneys acquired at a subsequent sheriff's sale under execution to pay his debts, they cannot avail themselves to their advantage and to her disadvantage of her acquiescence in the divorce decree; as to them, she is not estopped to claim as her own whatever interest they acquired in the land.

3. ————: **Limitations: Married Woman.** At the time of the decree in the divorce suit by which one-half of the plaintiff wife's land were decreed to her defendant husband, who made default, that half was not in the actual possession of any one, and he made no effort to take possession and so far as the record shows did not know it had been decreed to him. Subsequently it was sold under execution against him and her attorneys bought it, and after her subsequent marriage rented it to her and her then husband, and they took possession under their lease. *Held,* that the Statute of Limitations did not begin to run against her at that time, for she was then a married woman. Nor did it run in favor of their grantee as against her, for the same reason.

4. ————: ————: **Laches: Subsequent Grantee.** The defense that a claim is stale is purely an equitable one, and unless there is some natural justice back of it, a court of equity will not entertain it. As to her attorneys, the plaintiff's claim is not stale, for up to the time she brought this suit she trusted entirely to them, and did not know that one-half her land could not be decreed away to her husband in her divorce suit. But they sold the land to her brother-in-law, who knew of the conveyance made in 1881 to her by her husband through her sister, as intermediary, of all the land, but was without notice that the decree in the divorce suit setting off to her husband one-half the lands so conveyed to her was not binding, and she saw him, after having purchased that half, go on it and make lasting and

Bucher v. Hohl.

valuable improvements upon it and occupy it for more than ten years. *Held*, that, as to him, her claim, though she be a married woman, and beyond the reach of the Statute of Limitations, is stale, but as he was not wholly innocent, he should be required to settle with her for the purchase price yet unpaid, rather than with her attorneys, his grantors.

Appeal from Jefferson Circuit Court.—*Hon. Frank R. Dearing*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. A. Kennedy* and *Mooneyham & Gregory* for appellant; *A. T. Brewster* of counsel.

(1) A divorce proceeding is a proceeding *in personam;* in order that a court may acquire jurisdiction in proceedings *in rem*, there must be an actual seizure and possession of the *res*, or equivalent proceedings had by the officer of the court to bring the subject-matter before the court. And in the divorce suit brought by Mrs. Mabee, as no demand was made on lands, but the action brought was purely personal, the court had acquired no jurisdiction (of her lands.) Beyer v. Trust Company, 63 Mo. App. 521; Smith v. McCutchem, 38 Mo. 415; Latince v. Railroad, 43 Mo. 105; Wilson v. Railroad, 108 Mo. 588; Boswell v. Otis, 9 How. (U. S.) 336; Pennoyer v. Neff, 95 U. S. 714; Britton v. Steber, 62 Mo. 370; Wood v. Boots, 60 Mo. 546. (2) It is the duty of an attorney to disclose to his client all matters pertaining to the subject of his employment, and the highest degree of good faith and fairness is required of the attorney; the courts view such transactions with the utmost scrutiny, and if they present even a suggestion of unfair dealing, the burden is on the attorney. 4 Cyc. Law and Proc., 960 and 961; Mills v. Mills, 26 Conn. 213; Cox v. Delmas, 99 Cal. 104; Howell v. Baker, 4 John. Ch. 118; Haight v. Moore, 37 N. Y. Super. Ct. 161. The relation of attorney and client is one of especial trust and confidence in the attorney. Aultman,

Miller & Co. v. Loring, 76 Mo. App. 70; Davis v. Kline, 96 Mo. 401; Eoff v. Irvine, 108 Mo. 378. An attorney can in no case buy and hold otherwise than in trust any adverse title or interest touching the thing to which his employment relates. Davis v. Kline, 96 Mo. 406; Baker v. Humphrey, 101 U. S. 494. Counsel who has been consulted about title to land will not be permitted to purchase an outstanding one and set it up in opposition to his client; if he does, it enures to the benefit of the client. Davis v. Kline, 96 Mo. 406; Weeks on Attorneys, sec. 274; Eoff v. Irvine, 108 Mo. 383. The record that discloses the relation of attorney and client touching a levy upon the real estate and purchase by the attorney is a sufficient notice to a subsequent purchaser from the attorney that it enures to the benefit of his client. Briggs v. Hodgdon, 78 Me. 514. Misrepresentation of the law is something binding on the party who makes it. This is true in transactions between parties occupying fiduciary and confidential relations. Hickman v. Hickman, 46 Mo. App. 506; Bigelow on Fraud, 488; Moreland v. Atchison, 19 Tex. 311. The right to relief seems to be admitted where "a party should unintentionally deceive another by misrepresenting the law to him, or knowing him to be ignorant of it knowingly take advantage of his ignorance for the purpose of deceiving him." Hickman v. Treat, 78 Me. 506; Abott v. Treat, 78 Me. 126; Weeks on Attorneys, sec. 274; Wilber v. Robinson, 29 Mo. App. 157; Ward v. Brown, 87 Mo. 468; Bliss v. Pritchard, 67 Mo. 181; Jackson v. Outlaw, 56 Miss. 541. (3) Where an attorney becomes aware of a defect in his client's title to lands, his purchase of an outstanding title will enure to his client. Weeks on Attorneys, secs. 277, 279; Aultman, Miller & Co. v. Loring, 76 Mo. App. 75; Eoff v. Irvine, 108 Mo. 378. (4) The intent of all Statutes of Limitation is to cut off old, stale claims. The spirit of the limitating law is that he that hath rights and is careless or slothful in asserting them should be forever barred of

claiming them in courts of justice. But Statutes of Limitation go only to the remedy and do not extinguish the cause of action. Morgan v. Railroad, 51 Mo. App. 523; Freeman v. Hill, 45 Kan. 435. Where the Statute of Limitations is pleaded in bar to an action, plaintiff may avoid the bar by replying that the cause of action has been fraudulently concealed from his knowledge by defendant until a period within the time limited by the statute before the action was commenced. Turnpike Corp. v. Fields, 3 Mass. 201. To hold that by concealing a fraud or by committing a fraud in such a manner that it conceals itself until such time as the party committing the fraud could plead the Statute of Limitations to protect it, is to make the law, which was designed to prevent fraud, the means by which it is made successful and secure. Bailey v. Glover, 88 U. S. 21; Vigers v. O'Bannon, 118 Ill. 334; Aultman, Miller and Co. v. Adams & Sherlock, 35 Mo. App. 508; Aultman, Miller & Co. v. Loring, 76 Mo. App. 73. When a relation of trust and confidence exists between the parties so as to render it the duty of defendant to disclose the true state of the case to the plaintiff, the statute commences running only from the time of the discovery of the fraud or deceit. Wilson v. Ivy, 32 Miss. 233. (5) In order for a purchaser to be an innocent purchaser he must purchase in good faith, for a valuable consideration and without notice, and if any of these elements is wanting he is not an innocent purchaser. Young v. Schofield, 132 Mo. 650. (6) The law imputes actual notice to one who either knows of the existence of an adverse claim or title or has the means of knowing and fails to use it. The prior recorded deed in the case at bar, of which defendants had knowledge, is such actual notice. Speck v. Riggin, 40 Mo. 405; Muldron v. Robinson, 58 Mo. 179; Meier v. Blume, 80 Mo. 179; Sensenderfer v. Kemp, 83 Mo. 581; Taafe v. Kelley, 110 Mo. 127; R. S. 1899, sec. 924.

*E. J. Bean* for respondents.

(1) There is no evidence of any fraud in this case. (2)   The purchasers of the land bought it at the court house door, at public sale, in good faith, and paid the sum of four hundred and seventy-five dollars therefor on January 16, 1885. (3) The circuit court had the power to award specific property to appellant for alimony, and the decree of the circuit court is valid and binding on appellant herein. Sec. 2927, R. S. 1899; Crews v. Mooney, 74 Mo. 26.   (4) Appellant is estopped from claiming title to the land in question because she accepted the benefits of the decree of the circuit court giving her alimony, and because she has stood by for many years and witnessed the transfer of the property and improvements made thereon without ever claiming title to the same.   (5)   Appellant's claim is barred by the Statute of Limitations.

VALLIANT, J.—This is a suit to quiet title to 75 acres of land in Jefferson county. The trial in the circuit court resulted in a finding and judgment for the defendants, from which judgment the plaintiff has appealed.

Both parties claim title derived from John Mabee who, it is agreed, owned the land in 1880 and on down until it passed either to the plaintiff in 1881, or to defendants in 1884.

April 5, 1881, plaintiff was the wife of John Mabee; on that day John Mabee and wife conveyed a tract of 120 acres, of which the 75 acres in suit were a part, by warranty deed, to Elizabeth M. Simon for the consideration, as expressed, of $2,700, and on the same day Elizabeth M. Simon for the same consideration, as expressed, by warranty deed conveyed the 120 acres to the plaintiff. These deeds were duly recorded and they constitute the plaintiff's title.

In January, 1884, plaintiff brought suit against

her then husband, John Mabee, for divorce, praying also for alimony. Mabee being then a non-resident was given constructive notice of the suit by publication; he made default, the plaintiff obtained a decree of divorce, and in the same decree it was adjudged that she should have as for her alimony one-half, according to value of the 120 acres, and commissioners were appointed to make partition of the same which was done, setting apart to her husband the 75 acres now in suit and to her the remaining 45 acres, which contained the improvements. Plaintiff went into possession of the part allotted to her, but Mabee never appeared to take possession of the part set off to him; if he ever heard of it the record does not show it. In 1884 a judgment was rendered against Mabee in the circuit court of that county for about four hundred dollars, in favor of certain parties strangers to this record, execution issued and under it the sheriff sold the 75 acres in question as the property of Mabee and executed to the purchasers a sheriff's deed therefor. That is the title under which defendants claim.

Thus it will be seen that as the title stood on the record at the date of the decree of divorce, the plaintiff was awarded one-half of her own land for her alimony and the rest was by the decree given to her husband, she seeks now to have a decree vesting the title in herself to that part of her land which was given to her husband, alleging that the decree in that respect was obtained by fraud.

The following appears from the defendants' evidence: The attorneys for the plaintiff in the divorce suit had been attorneys for Mabee in a suit filed by him to the September term, 1881, to set aside the deeds of April 5, 1881, from Mabee and wife to Simon and from Simon to plaintiff, which suit after having been instituted was voluntarily dismissed. To the same term of court Mabee, by the same attorneys, brought suit against this plaintiff, his then wife, for divorce, which

suit Mabee also voluntarily dismissed. Afterwards Mabee became a non-resident of the State, the plaintiff still residing in Jefferson county, and in 1884 she employed these same attorneys to bring suit for her against Mabee for divorce on the ground of abandonment, which they did, and it was through their instrumentality in that suit that the divorce above mentioned was obtained, along with a decree giving her one-half of her own land as alimony. And thereafter in January, 1885, when the 75 acres so allotted to Mabee were sold under execution against him, these same attorneys were present and became with another the purchasers and took the sheriff's deed and in 1890 the other conveyed his interest to them. In 1891 these attorneys sold and conveyed the land to their co-defendant Hohl, taking back from him a deed of trust to their co-defendant Moss as trustee to secure the payment to them of the note given for the purchase money, $750, which they still hold, nothing having been paid on it but the interest; they are co-defendants with Hohl in this suit seeking to maintain their title under that deed of trust.

There is not in this record the suggestion of one single fact going to impeach the validity of the deeds from Mabee and wife to Simon and from Simon to plaintiff of date April 5, 1881. True it is, the attorneys testified that after investigation they were satisfied that those deeds could not be sustained, but they stated no fact on which to base such opinion and the opinion itself was given in the face of the fact that Mabee himself, while acting under their advice, voluntarily dismissed his suit brought to set the deeds aside and that he finally abandoned his wife and moved to another State.

An attorney cannot acquire title to his client's property in this State under the circumstances above stated. [Aultman, Miller & Co. v. Loring, 76 Mo. App. 70; Davis v. Kline, 96 Mo. 401; Eoff v. Irvine, 108 Mo. 378.]

Under the undisputed facts as above stated there

can be no doubt of the plaintiff's right to have back from her attorneys the interest that they hold in that portion of her land which was improvidently decreed away in the divorce suit unless she is estopped from asserting her right by acquiescence in the decree, or has slept so long that her suit has become stale, or she is barred by the Statute of Limitations or there is an innocent purchaser for value whose rights a court of equity ought to protect.

We will first consider these features of the case as they bear on the rights of the plaintiff as against the defendants who were her attorneys.

The plaintiff testified that from the time she brought the divorce suit until just before this suit was brought she never consulted any other attorney and that she trusted entirely to her attorneys in that suit; that while the suit for divorce was pending one of these attorneys told her that "they [meaning her husband and his friends] were fighting me hard, but that he [the attorney] was doing the best he could for me;" and that after the decree he came to see her with the men who were appointed to divide the land and told her that that was the best he could do for her. The attorney himself on that point testified to substantially the same effect; he said: "I told her I doubted her being able to get a divorce if they fought her, and I advised her that I didn't think she could hold the property; I told her they might let her off with part of the property and take a divorce." The divorce decree was by default. One of the attorneys testified that Mabee was "a little bit of a fellow and a sort of an imbecile;" that after he left the State an uncle of his came to look after his affairs and that it was with this uncle that they [the attorneys] agreed on the terms of the divorce decree. There was some evidence for defendants to the effect that in the petition for divorce it was stated that the plaintiff was without means and that Mabee was in possession of the 120 acres; but the papers in that

case were lost and no one attempted to state with certainty what the contents of the petition were except that the application for divorce was based on abandonment. Plaintiff testified that she never knew what the petition contained. But as between the plaintiff and her attorneys in that suit the latter were more responsible than she for the statements in the petition.

The evidence shows only a case of implicit trust and confidence in her attorneys, and if she acquiesced in that decree it was because her attorneys told her it was the best that could be done for her. Under those circumstances her attorneys cannot avail themselves to their advantage and to her disadvantage of her acquiescence; as to them she is not estopped from claiming her own.

As to the plea of the Statute of Limitations the evidence for the defendants does not show that they took possession of the land as soon as they bought at the sheriff's sale. It was not at that date improved, the improvements were all on the 45 acres set off to plaintiff, and as to the 75 acres set off to Mabee there was no actual possession then taken. The witness in his own behalf on that point said: "I tried to get somebody to go onto our part of it and exercise the right of ownership over it. She [meaning the plaintiff] married Mr. Bucher about that time and I rented the property to them, they lived there two or three years. They had the property right along until we sold it to Mr. Hohl."

In so far as that testimony is intended to show a recognition by the plaintiff of the title her attorneys acquired to the land, it must be taken in connection with what has been above said on the subject of her acquiescence in the decree that gave her husband half of her land in the divorce suit while he in his own behalf was making default and claiming nothing.

The significance of that testimony, however, as it bears on the question of the Statute of Limitations is

that it shows that at the time the defendants' actual possession began the plaintiff was a married woman; therefore, the Statute of Limitations did not begin to run against her.

As to the staleness of the plaintiff's claim this is to be said: The defense that a claim is stale is purely an equitable one and unless there is some natural justice back of it a court of equity will not entertain it.

But the title of the defendant Hohl rests on a better foundation than that of his co-defendants from whom he purchased, although when he purchased he was not altogether ignorant of the title of the plaintiff. Hohl's wife and the plaintiff and Miss Elizabeth Simon, who was the medium of the conveyances of April 5th, 1881, were sisters, and he had knowledge of the transaction and knew that the plaintiff had acquired title by those deeds. But he was not responsible in any degree for the decree in the divorce suit and, without notice to the contrary, he would have a right to presume that the title as declared by that decree was binding on the parties to the suit.

The Statute of Limitation has not run in Hohl's favor because when he went into possession in 1891, the plaintiff was a married woman and has since so continued. But as to him the plea of estoppel has more force. The plaintiff saw him go on the land and make valuable improvements, clearing land, building houses, fences, etc., as he says to the extent of $2,500 value, and so continued for more than ten years. Under those circumstances, no just ground appearing to question his good faith, equity will hold that the plaintiff, married woman though she be and beyond the reach of the Statute of Limitations, ought to have awakened sooner to her rights and have asserted them before Hohl had spent his time and labor and money improving the land. As to him she should not now be heard to claim the whole 75 acres in suit. Still Hohl is not altogether innocent. He had notice of the plaintiff's title under

the deed of 1881, and he knew that his co-defendants from whom he purchased were her attorneys in the divorce suit and that their only title was the sheriff's deed under the execution against Mabee. It will not, therefore, be inequitable to require him to settle with her instead of her attorneys for the purchase price of the land and derive his title through such settlement.

The judgment is reversed and the cause remanded to the circuit court of Jefferson county with directions to enter a decree divesting the defendants of all title to the 75 acres of land described in the petition and vesting the same in the plaintiff subject to the right of the defendant Hohl to at any time within six months of the date of the decree pay to the plaintiff the sum of $750 and interest at six per cent per annum from the date of the filling of this suit, and that upon making such payment the title to said land to revest in him, the said Hohl, free of all claims of the parties to this suit and that defendants pay the costs in the circuit court.

All concur.