OVIATT *v.* SMITH.

ATTORNEY AND CLIENT—PURCHASE BY ATTORNEY AT FORECLOSURE SALE OF PROPERTY IN WHICH CLIENT IS INTERESTED INURES TO BENEFIT OF CLIENT.

Where defendant, while acting as plaintiff's attorney in a divorce suit, bought at foreclosure sale a house and

On right of attorney to purchase subject-matter of litigation or of retainer from client and his duty in relation thereto, see notes in 23 L. R. A. (N. S.) 679; 28 L. R. A. (N. S.) 723.

lot owned by her and her husband by the entireties, his purchase is *held*, to inure to the benefit of his client, although, at the time of the purchase, he honestly believed that the divorce suit had been dropped.

Appeal from Lapeer; Gillespie (Glenn C.), J., presiding. Submitted January 23, 1924. (Docket No. 123.) Decided March 5, 1924.

Bill by Jessie Oviatt against Herbert W. Smith to establish a trust in real estate. From a decree for plaintiff, defendant appeals. Affirmed.

*Vincent D. Ryan*, for plaintiff.

*Herbert W. Smith, in pro. per.*

Plaintiff employed defendant, an attorney at law, to file a bill of divorce against her husband, John Oviatt. The bill was filed December 12, 1914. Mr. Oviatt contested the case and upon a hearing plaintiff's bill was dismissed. The parties to that suit owned as tenants by the entireties a house and lot in Lapeer. On the dismissal of plaintiff's bill and on July 13, 1915, they gave to the State Savings Bank of Lapeer a mortgage for $160 to pay their respective attorneys and the expenses of the case. They did not resume marital relations. In December of 1917, plaintiff again consulted defendant about a divorce and obtaining her rights in the property, which was then occupied by her husband and from which she derived no income. Defendant advised her that she could not secure a decree for divorce under the circumstances but suggested that possibly if she filed a bill her husband would file a cross-bill setting up desertion, obtain a decree on that ground and have their property matters adjusted. He therefore prepared a bill for her and it was filed December 3, 1917. Defendant's appearance was entered and the attorneys attempted an adjustment.

Plaintiff's husband, however, was obdurate and outside of an application for temporary alimony being filed nothing was done in the case so far as the calendar entries disclose, until December 15, 1920, when an answer and cross-bill was filed by Mr. Oviatt.    The substance of this pleading does not appear.    Plaintiff consulted defendant occasionally and he advised her and correctly so that if she paid off the mortgage the title to the property would still remain in her and her husband as it was.    She was then living in Bay City and defendant agreed to notify her if any steps were taken to foreclose the mortgage.

The mortgage to the bank not being paid it commenced foreclosure by advertisement.    Defendant promptly wrote plaintiff advising her of this proceeding but she claims she did not receive the letter although she did know of the sale before the period for redemption expired.    On December 20, 1919, the premises were sold on foreclosure for $220 to defendant, he being the highest bidder.    They are admitted to be worth $1,450.    After the period of redemption had expired it is undisputed that plaintiff offered to reimburse defendant if he would deed the property to her and that he refused.    This bill was then filed and a decree was entered requiring defendant to deed the premises to plaintiff upon payment of the sum of $220 with interest, taxes, etc.    From this decree defendant appeals.

FELLOWS, J. (*after stating the facts*).    We may accept defendant's testimony that he honestly believed that the divorce suit had been "dropped" and his employment at an end when he purchased the property. It may be the attorneys had abandoned hope of getting the parties to a settlement; but independent of defendant's belief the case as a matter of fact was still pending in court and undisposed of and plaintiff's rights in the property which he was employed to protect were

still unsettled.  He had not been discharged and the relation of attorney and client still existed.  The property he purchased was that in which his client had an interest, which interest his employment related to.  Under these circumstances, may he purchase the property for his own benefit or does the purchase inure to the benefit of his client?

We shall first consider the cases cited by defendant. In *Humphrey* v. *Hurd*, 31 Mich. 436, the attorney had advised the client to buy an outstanding claim in one Chapman.  The client refused to buy it as he considered it of no consequence.  Later the attorney was employed by another to procure the Chapman title for him; this he did.  It was held that the later transaction was not invalid by reason of the attorney's former employment.

In *Webber* v. *Wannemaker*, 39 Colo. 425 (89 Pac. 780), the relation of attorney and client had never existed between the parties.  In *Fisher* v. *McInerney*, 137 Cal. 28 (69 Pac. 622, 92 Am. St. Rep. 68), the purchase was made with the consent of the client. In *Rogers* v. *Gaston*, 43 Minn. 189 (45 N. W. 427), the title was not acquired by the attorney until two years after his employment had ceased.  And in *Baker* v. *National Bank*, 77 Iowa, 615 (42 N. W. 452), the attorney took the title in his own name to protect his client and held title as security for the amount paid by him.  The client refused to repay him and it was held that he was justified in selling the premises to protect himself for the money advanced and that he might bid the property in himself and that he thereby acquired a good title.  All of these cases it will readily be seen are distinguishable from the one before us.

In *Taylor* v. *Young*, 56 Mich. 285, this court had before it a similar situation to the case at bar.  The sale was a judicial one and the premises were bid in in the name of complainant and her attorney who made the bid, he claiming an interest by way of lien for

his professional service. The gist of the holding is found in the following excerpt from the opinion:

"There can be no doubt that under the purchase made by Draper, while acting as her attorney, whether the bid was in his or her name, the purchase was hers and not the attorney's, and it was his duty to release the property to her, if bid off in his name, at any time she might request it, and in case he refused, it was optional with her to hold him as her trustee, and require him to account as such therefor, or compel him to convey to her."

This holding is in accord with the uniform trend of authorities. A few quotations will, we think, show how firmly this rule is intrenched in the law.

"The purchase by an attorney of an interest in the thing in controversy in opposition to the title of his client is forbidden, because it places him under temptation to be unfaithful to his trust. Such a purchase is not voidable merely, but void absolutely. An attorney who has been employed professionally to sustain a title to land may not, either before or after the cause is ended, or during the continuance, or after the termination of the relation of counsel and client, while the client holds, or after he has conveyed his interest, purchase for himself any outstanding title; if he does, it may enure to the client or his vendee, who may recover the premises from the counsel by paying or tendering the amount of the purchase money with interest; and a purchaser from such counsel, with notice of the facts, is in the same situation." Weeks on Attorneys at Law (2d Ed.), § 277.

"It can be safely stated as a sound and salutary legal principle that, so long as the relationship of client and attorney exists, the attorney is a trustee for his client in and about the cause or the subject thereof, and any trade that he makes or benefits he may derive, resulting from the litigation, will inure to the benefit of the client, the *cestui que trust*. This is a rule so wholesome and just that citation of authority is needless, and it would be difficult to find an authority holding

to the contrary." *Singo* v. *Brainard,* 173 Ala. 64, 66 (55 South. 603).

"An unbroken line of authorities, both in England and in America, establishes beyond question the doctrine that when an attorney is entrusted with litigation, the conduct of proceedings or the management of any business in which he is under the slightest obligation to look after and protect the interests of others, he will not be permitted to derive therefrom any personal benefit which conflicts in the least degree with that obligation and the protection of those interests." *Crayton* v. *Spullock,* 87 Ga. 326 (13 S. E. 561).

"That an attorney cannot himself purchase at judicial sale the property in litigation in which his client is concerned, and hold it to his own use without the consent of his client, is an elementary principle. If he so purchase, the client may at his election treat him as a trustee and enforce the trust. Motives are immaterial, and it is also immaterial whether the client actually lost or gained by the transaction. Such a purchase is contrary to public policy." *Olson* v. *Lamb,* 56 Neb. 104, 114 (76 N. W. 433, 71 Am. St. Rep. 670).

"A solicitor can not secretly purchase the subject-matter in litigation, or any interest therein, and hold the same adversely to his client. Such a purchase is voidable as to his client.

"If he does so purchase, he will be held to be a trustee for his client as to the property or interest so purchased. The purchase of the subject-matter of litigation is forbidden as against public policy, and because it places the solicitor under temptation to be unfaithful to his trust." *Sutherland* v. *Reeve,* 151 Ill. 384 (38 N. E. 130).

"The rules of law governing the transactions of an attorney with his client are most strict, and operate to protect the client from any advantage that may be possessed by the attorney on account of superior knowledge or confidence reposed in him by the client. What the law does not consider unfair dealing between other parties, where no fiduciary relation exists, will frequently not be sustained as between attorney

and client.   While the relation exists, an attorney is not permitted to take advantage of the client's affairs, against his interest, to make money.   The hardship of the doctrine, in its application to particular cases, is not so much regarded as the public mischief which would grow out of lax rules permitting the attorney to take advantage of his position and knowledge and the confidence of his client, in order to make advantageous transactions for himself.   No rule, in its application, has a more beneficial effect upon the pecuniary interests, or more effectually promotes the dignity, of the legal profession.   It is the source of the utmost confidence in the attorney, and secures to the client services meriting the most generous rewards. Its strict enforcement is necessary for the proper protection of the client.   And courts will not refrain from its application because the wrong to the client may not be fully apparent in extent, nor the influence under which it was wrought entirely understood.

"The application of this rule forbids the attorney to purchase, against the interest of his client, property sold in the course of litigation in which he is retained, and such sales will be held void, or the attorney will be held as the trustee of his client, and required to account as such."   *Harper* v. *Perry,* 28 Iowa, 57.

The case going further than any case we have examined is *Henry* v. *Raiman,* 25 Pa. St. 354 (64 Am. Dec. 703).   We quote from what was there said:

"If such a purchase can be justified by showing that, before it was made, the relation of counsel and client had terminated either by the decision of the cause, or by the conveyance of client's interest to another, the burden of proof is on the party who affirms this to be the case.

"But such a transaction is not sustained on any such grounds.   It is a mistake to suppose that the attorney is at liberty to violate the professional confidence reposed in him by his client, the moment the relation of counsel and client terminates.   The necessities of the client compel him to repose unlimited confidence in his counsel.   When he is in jeopardy—either of life, liberty, property, or character—he is obliged to repose confidence in his professional adviser, in

order that he may be properly defended.    If he is threatened with a lawsuit about his land, he is compelled to exhibit his title papers to his counsel, and to disclose to him every supposed defect in them, in order that imperfections may be remedied, and preparations made to sustain the title.    So, if the life or liberty of the client be in danger from legal proceedings against him, unlimited confidence in his counsel is so necessary, that he cannot safely go to trial without it.    As the necessities of litigation compel confidence on the one side, the policy of the law requires fidelity on the other.    The policy which enjoins good faith, requires that it should never be violated.    The reasons for requiring it at all demand that it shall be perpetual.    *    *    *.  The purchase by an attorney of an interest in the thing in controversy, in opposition to the title of his client, is forbidden, because it places him under temptation to be unfaithful to his trust. Such a purchase, therefore, enures to the benefit of his client.    Where the confidence has relation to the title to land, the fidelity of the counsel must necessarily follow the title of his client wherever it goes.    Any other rule would defeat the object of the trust, by destroying the market value of the title."

Referring to this case it was said by Mr. Justice Swayne, speaking for the court in *Baker* v. *Humphrey,* 101 U. S. 494:

"Without expressing any opinion as to the soundness of this case with respect to the extent to which the principle of trusteeship is asserted, it may be laid down as a general rule that an attorney can in no case, without the client's consent, buy or hold otherwise than in trust, any adverse title or interest touching the thing to which his employment relates.    He cannot in such a way put himself in an adversary position without this result.    The cases to this effect are very numerous and they are all in harmony."

See, also, *Cunningham* v. *Jones,* 37 Kan. 477 (15 Pac. 572, 1 Am. St. Rep. 257) ; *Bucher* v. *Hohl,* 199 Mo. 320 (97 S. W. 922, 116 Am. St. Rep. 492) ; *Succession of Hoss,* 42 La. Ann. 1022 (8 South. 833) ; *Briggs* v. *Hodgdon,* 78 Me. 514 (7 Atl. 387) ; *Stephens*

v. *Dubois,* 31 R. I. 138 (76 Atl. 656, 140 Am. St. Rep. 741); *Wade* v. *Pettibone,* 11 Ohio, 57 (37 Am. Dec. 408); 2 R. C. L. p. 972; 6 C. J. pp. 682, 683.

It would be "carrying coals to Newcastle" to attempt to add to the language above quoted.    We shall not attempt so to do or to paraphrase it.    We find no moral turpitude on the part of the defendant.    He misjudged his duty.

The decree will be affirmed, with costs of this court.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.