BLANCHE G. HAYWARD and BRUCE GREEN,
Appellants,

*v.*

RUTH G. GREEN,
Appellee.

*Supreme Court, On Appeal, May 14, 1952.*

SOUTHERLAND, Chief Justice, and WOLCOTT and TUNNELL, Justices, sitting.

*Stewart Lynch* and *Florence E. Freeman,* for plaintiffs below, appellant.

*P. Warren Green,* for defendant below, appellee.

TUNNELL, Justice, delivering the opinion of the court:

Plaintiffs and defendant are three out of a total of ten brothers and sisters. Differences over the settlement of their father's estate[1] resulted eventually in this litigation.

When the father died in 1943, he left no personal estate; his only asset was a possible equity in a farm of 167 acres near Newark, Delaware. The existence of such equity, and the extent of it, if there was one at the time of the father's death, are conjectural. The children, however, hoped that upon holding the farm for a time there would be a sufficient appreciation in its value to enable them to dispose of the farm, discharge in full the debts of the es-

---

[1] For a fuller statement of facts than the one here given reference may be had to the report of the proceedings below, 30 *Del. Ch.* 392, 61 *A.* 2d 692.

tate, and retain some substantial equity for distribution among themselves. Such a plan was ultimately adopted, and to that end an absolute fee simple title to the farm was deeded to the defendant. One of the sisters and a niece, who was the only child of a deceased sister, gave their respective one-tenth interests to the defendant, outright, but the other seven, who included plaintiffs, conveyed their rights to defendant to be held for their benefit.

It was a term of the oral agreement appointing defendant agent for execution of this plan that on eventual settlement defendant should be reimbursed for whatever monies she had laid out for the common benefit, but the matter of interest upon those disbursements was not mentioned. Thereupon, defendant, out of her own funds, paid debts against the estate amounting to $3,629.47. She also assumed the mortgage, which, with interest, then amounted to $5,300. The debts which the defendant paid were liens upon the estate, and until they were paid off by defendant, interest was accruing upon them. From 1943, when the conveyance was made, however, until 1948, defendant simply remained in possession of the farm, pocketing the income from it and making occasional small expenditures for its maintenance.

Then, in 1948, defendant started to sell the farm for a price of three or four times its estimated worth at the time of the father's death. She let it be known, however, that she claimed to own the farm absolutely, and that the proposed sale, therefore, would be for her own account.

Plaintiffs promptly came into Chancery to enjoin the sale and to impress a trust upon the property. The Vice Chancellor,[2] after hearing the testimony, found the above to be facts and concluded that title had been conveyed to defendant for seven-tenths of the farm on faith that she would hold that fraction of it for the benefit of seven of the brothers and sisters. Thereupon, the Court of Chan-

---

[2] Who subsequently became, and now is, the Chancellor.

cery enjoined the sale and declared a trust to be impressed upon the property in accordance with the above oral agreement, appointed defendant to serve as trustee, and ordered her to proceed to dispose of the farm and then to account for all items of income and expense connected with the farm since her acquisition of the legal title to the property.

The cause below, therefore, went forward in two stages. Decision on the merits impressing the trust and ordering the accounting was embodied in the Vice Chancellor's opinion, 30 *Del. Ch.* 392, 61 *A.* 2d 692, of the 20th day of October, 1948, and put into force by his judgment of May 24th, 1949. The second stage, dealing with the accounting, was decided by the Chancellor's letter opinion of the 20th day of November, 1951, and put into force by the judgment of December 19th, 1951.

The first opinion had mentioned that defendant would be entitled to interest on the monies she had expended to liquidate the debts of the estate. The judgment entered on that opinion, however, did not make any reference to interest, unless it did so indirectly. These are matters which we shall later be required to consider in some detail.

After this judgment of May 24th, 1951, the defendant proceeded to sell the farm, settle with the purchaser, and prepare and present her accounting. Numerous exceptions were filed to the accounting of the defendant as trustee, and testimony was taken thereon. Some of the exceptions were sustained, and some were overruled. In the account were the following two items, being the items with which this appeal is concerned: (1), an allowance to defendant of interest in the sum of $1,751.21 on the monies laid out and expended by her on the 15th day of November, 1943, in the payment of her father's debts, and (2), an allowance to defendant of the sum of $1,500 for services rendered to her as trustee by P. Warren Green, her attorney.

Plaintiffs appealed to this court on the 3rd day of January, 1952.

Defendant promptly moved to dismiss. In support of the motion, three grounds were urged, two of which applied only to the item of interest, and one of which was directed both to interest and to the legal fee.

The first contention to be considered is that as to the interest item the appeal was taken too late, that is, after the expiration of the six months allowed by our constitution.[3] It is apparent that the appeal was taken more than six months after the first judgment and less than six months after the second, so the question to be decided, therefore, is whether this appeal is from the first judgment or the second one.

The defendant's theory, of course, is that the instant appeal is from the judgment of May 24th, 1949. In support of her position, defendant points to this sentence in the opinion, 30 *Del. Ch.* 392, 61 *A.* 2d 692, 699, of October 20th, 1948:

"However, these interests will be made subject to appropriate instruments entitling the defendant to payment in full with interest for all payments made on behalf of the estate of George Green, plus other disbursements which benefited the interests of all."

No language in the judgment entered on that opinion directly mentions or touches upon interest in any way, but defendant contends that the sentence above quoted from the opinion was, nevertheless, incorporated into the judgment by the following reference:

"Ordered, adjudged and decreed that Ruth C. Green be and she is hereby decreed a Trustee of the said Green Farm at Newark, Delaware, upon the trust to hold title thereto for the complainants and the others mentioned in the Opinion, and according to the terms of that Opinion  *  *  *."

We do not agree with defendant. The judgment of May 24th simply subjected the Green farm to the trust, defined the general terms of the trust, and directed the

---

[3] *Art. IV, Sec.* 28.

trustee at a later date to give an accounting as to all matters of money. Thus, the language which defendant quotes from the judgment and seeks to emphasize, and which we have above quoted, cannot be applicable to this narrow question of interest, but has reference to the broad question of the character of the ownership of the farm.

Moreover, this language quoted from the judgment as the ground for the motion to dismiss deals with something which the defendant is expected to do, i. e., to hold and manage the farm for the benefit of others. If any interest is to be paid, it is something to be done by plaintiffs. To read into this sentence a direction that the plaintiffs shall pay interest would be a distortion of its meaning. If the language in the opinion of October 20th, 1948, dealing with the question of interest had been in the judgment, a different problem would be presented, but we fail to find a single word in the judgment referring, either expressly or by inference, to the subject of interest.

Next, the defendant argues that the plaintiffs cannot take an appeal as to interest because, prior to taking the appeal, they accepted money under other provisions of the same judgment which had allowed the interest. Language apparently supporting the defendant's theory has been borrowed from decisions involving sets of facts where the taking of money under a judgment and subsequently appealing from it were inconsistent positions. These are cases where the judgment involved was indivisible, or where, even though the judgment was separable into components, having taken money under the judgment amounted to an estoppel. Such vital factors, however, are not even alleged to be present here. If plaintiffs should prevail, defendant will owe them more than she has yet paid. On the other hand, if defendant prevails, she will simply not owe any more than the sums specified in the accounting in Chancery. Defendant's rights will not be prejudiced in either event. No inconsistency whatever is involved, and there is no force to defendant's contention on the point.

2 *Am. Jur.*, *Sec.* 215; 4 *C. J. S.*, *Appeal and Error*, §§ 215, 216, *pp.* 415-419.

■ Finally, defendant argues that since the payment of interest and the allowance of counsel fees are both matters of judicial discretion, neither question is appealable. Defendant has not done justice to the breadth of the contentions of plaintiffs. Plaintiffs contend, first, that the Vice Chancellor committed error in law in concluding that he had any discretion to award either interest or counsel fees, and secondly, that if the Vice Chancellor is found, over their opposition, to have had such a discretionary power, he should nevertheless, be held to have abused his discretion under the facts of this case. Clearly an appeal lies for material error of law or abuse of discretion. *In re Public Service Holding Corp.; (Cooperative Finance Corp., v. Killoran, Receiver)* 26 *Del. Ch.* 436, 443, 24 *A. 2d* 584.

The motion to dismiss must be denied.

On the merits of the appeal the plaintiffs first take up the question of interest and then the counsel fees. We shall follow the same order.

On the subject of interest, plaintiffs begin by saying that it is a firm principle of equity that interest is not allowable unless it is provided for, either expressly or by implication, in a contract, or unless it is awarded as damages to an injured party. Accordingly, since there was admittedly no contract here as to interest, and since plaintiffs were the prevailing parties, plaintiffs contend that the Court of Chancery had no legal right to award interest to defendant. In fact, they argue that since a trustee *ex maleficio* is never the injured party, such a trustee is never awarded interest.

■ But this is an incorrect statement of the law. The appropriate legal principles cannot be stated categorically. The basic doctrine that he who seeks equity must

do equity operates to qualify any positive rule which could be formulated on the subject. He who has done a wrong is not necessarily to be charged with every item of damages which could conceivably be allowed against him. The person unfairly treated is himself required to be fair. In short, the law is that where a court of equity in its sound discretion finds that justice requires interest, it is the duty of that court to allow interest.

No useful purpose would ordinarily be served in including in an appellate court opinion citations of instances in which, under their respective facts, the courts have seen fit to make discretionary allowances. But plaintiffs have cited a number of cases where interest was denied a trustee *ex maleficio,* from which precedents they seek to have us draw the inference that it is a positive rule of law that interest may not be awarded to such a trustee. Accordingly, we call attention to certain precedents to the contrary.

In *Smith v. Drake,* 23 *N. J. Eq.* 302, an administrator, through a straw man, bought lands of an intestate at his own sale, New Jersey not having the Delaware practice of permitting the administrator to buy in such circumstances. Although the administrator was held to be a trustee *ex maleficio,* Chancellor Zabriskie, in ordering an accounting, nevertheless, said:

"But the decree must be made on equitable terms. The defendant paid debts of his intestate to the amount of the sum bid for the property. He must be allowed that sum with interest from the time when he paid it out * * *."

The Superior Court of Pennsylvania came to the same conclusion in the case of *Hoover v. Strohm,* 44 *Pa. Super.* 177 . There the plaintiff in a suit for interest had at one time agreed to acquire certain real estate for the defendant. Plaintiff had repudiated his agreement and attempted to hold the real estate as his own. In an earlier suit plaintiff had been adjudged a trustee *ex maleficio* and compelled to account. Even under these facts, the court allowed plaintiff interest.

For other instances where interest was allowed see *Oviatt v. Smith,* 226 *Mich.* 253, 197 *N. W.* 535; *Marr v. Marr,* 73 *N. J. Eq.* 643, 70 *A.* 375; *Loomis v. Satterthwaite,* (*Tex. Civ. App.*) Jan. 31, 1894, 25 *S.W.* 68; and *Barrell v. Joy,* 16 *Mass.* 221.

For authorities that the true rule is that the allowance of interest on a trustee's advancements of his own funds to the trust estate, whether the trustee is acting under an express trust or as a trustee *ex maleficio,* is a matter within the sound discretion of the court, reference may be had to 65 *C. J.,* 728, cases collected in an annotation in 124 *A. L. R., p.* 1414, and to the *Restatement of the Law of Restitution, Secs.* 156-158.

Now we must see whether there are facts in this record upon which the court below could have based its discretionary allowance of interest.

It will be recalled that on the 15th day of November, 1943, the defendant paid out the sum of $3,629.47 to discharge numerous debts of the decedent. If these debts had not been so paid, interest, of course, would have continued to accrue. In such a case, therefore, plaintiffs would have been forced to pay the same monies to outside creditors which the Chancellor has directed them to pay to the defendant. Clearly the plaintiffs benefited by the payment of the principal sum, and we find no such difference in kind between refunding the principal to the defendant and allowing her interest thereon as would make the repayment of the principal entirely proper, as it is conceded to be, but would constitute the allowance of interest thereon as reversible error.

The plaintiffs next say that the defendant should get no interest on what she paid for the benefit of the estate because the plaintiffs are receiving no interest on what they paid. A glance at the facts will furnish a sufficient reply to this argument.

Two items were disbursed by plaintiffs. The first, the sum of $12.50, paid by one defendant to the Register of Wills for defendant's letters of administration, is so small that interest on it would fall under the rule of *de minimis*. The second, the sum of $343.50, was advanced to pay the funeral bill of the father, but there is no real significance to this item either, because it was equally divided among all, or nearly all, of the heirs, so that a payment of interest thereon would simply involve a general passing about of small amounts of money which would leave the parties in the end approximately where they had been in the beginning. The unanswerable feature as to both these disbursements, however, is that the Vice Chancellor was not requested to allow any interest, and such a demand could not properly be made for the first time in this court.

One or two of the plaintiffs testified that they had money in the bank or in some way available, so that if the defendant had asked them to pay for any of these debts, they would have paid them. The answer to this contention is simply that it was not done. It was the defendant's money which was used, and the plaintiffs still had the use of their money. We do not say that the Chancellor could not have disallowed interest, but we fail to see how anyone could justify our decision if we should hold that his award of interest was an abuse of discretion.

Turning now to the subject of attorneys' fees, we find that we have covered much of this ground already in our discussion of the question of interest. As we said before, there is no mandate in law that an equity court, finding a defendant to have committed a wrong, must, therefore, impose upon the defendant all of the sanctions described in the law books. Plaintiffs forget that in enforcing this trust, the Vice Chancellor may well have had in mind what he hinted at in his opinion, that not all of the fault in aggravating these difficulties was on one side. Indeed, it would be unusual if such were the case in a bitter family differ-

ence of the kind here involved. It is interesting to observe in this connection that the court denied a petition of plaintiffs to appoint one of their number as trustee. The defendant was named. The Vice Chancellor appears to have made an effort to follow as closely as justice would permit to what was originally agreed upon among the parties. There can be no doubt that if all the intended arrangements had been carried out in an amicable and business-like fashion, the expenses of the agent or trustee, including her legal fees, would certainly have been allowable to her. 65 *C. J.*, 718-722.

Plaintiffs interpose an argument that defendant should be allowed no attorneys' fees because in Delaware the general rule is that even the prevailing litigant is not entitled to be allowed fees for his counsel. Plaintiffs overlook that the defendant appeared in this controversy in two capacities, originally as an individual and subsequently as trustee appointed by the Court of Chancery. Granting that she, of course, cannot recover counsel fees for services rendered to her as an individual, no such rule is applicable where a trustee needs and employs an attorney for the benefit of the trust estate.

Subsequently seeming to recognize the true rule, plaintiffs then go on to urge that the Chancellor should not have allowed attorneys' fees to the trustee here because in this case the allowance was for work done for the defendant's personal benefit. We do not so interpret the facts. We think it is perfectly clear from reading the Chancellor's letter opinion of November 20th, 1951, that he confined his allowance to the trustee to such legal services as were necessarily performed in her behalf as trustee for the benefit of the trust estate. To be certain that this important distinction was correctly drawn, however, it is necessary to consider individually the several items which were approved.

First, there was the matter referred to as the

Buckingham-Wooleyhan judgment. That was a case where *scire facias* proceedings had been instituted to revive the lien of a judgment against the deceased. The amount demanded was $3,337. The defendant's attorney in his investigation was fortunate enough to pick up some facts which led him, by diligent application, to discover proof that the father had, during his lifetime, paid off all but $65 of this debt. Thus, it was made possible to settle the *scire facias* suit for the sum of $166.55, including costs. For this work the Chancellor allowed the trustee the sum of $800 to be paid her attorney. That allowance cannot well be criticized.

It is true that the plaintiffs insisted that the *scire facias* suit had not been properly brought. They argued that because the defendant alone was a party to the action, having been sued in her capacities of *terre* tenant and administratrix of her father's estate, respectively, but not as trustee, it followed, therefore, that nothing her attorney did in connection with the suit was done in the interest of the trust or to be paid for out of trust funds. We are not in the least impressed by that argument. The intricacies of the common law practice as it prevails in Delaware in the matter of *scire facias*, and particularly on joinder of *terre* tenants and personal representatives of deceased persons, are inquiries quite beyond the scope of this appeal. If there was an insufficiency in the joinder of parties, we assume that it could have been cured in some fashion, even though a new suit might have been required. The main point, however, is that the debt involved was the father's debt, not the defendant's. And we note that when the matter was settled, indemnity was obtained for all of the heirs, not for the defendant alone. She and her attorney were working for the benefit of all the beneficiaries of the trust, and it is entirely fair for each interested party to be required to pay $80 on account of the counsel fees involved.

Then the Chancellor allowed the sum of $700 for general legal work performed in behalf of the trustee

after her appointment by the Court of Chancery. This item, *inter alia,* included numerous conferences with prospective purchasers and with the attorneys for some of the individual *cestuis que trustent,* ultimately even including letting out the property on sealed bids and the consummation of a sale at the sum of $65,750. Certainly the defendant needed an attorney for such a transaction. *Scott on Trusts, Vol.* II, *p.* 1005. As a trustee appointed by the Court of Chancery, she would have made herself vulnerable to serious criticism if she had not obtained counsel. She would have employed an attorney even if she had been a person of wide experience in business transactions of some magnitude, which she obviously was not. An allowance of $700 as attorneys' fees was indeed a very modest one and not in such a sum as would ever be disturbed on appeal in similar circumstances.

Plaintiffs rely upon the case of *Olson v. Lamb,* 56 *Neb.* 104, 76 *N. W.* 433, 437, 71 *Am. St. Rep.* 670, 678, as general authority that legal fees will not be allowed a trustee *ex maleficio.* But the facts of that case differ from the situation before us. There an attorney, Lamb, had unlawfully bought the property of one Olson, his client, at foreclosure sale. In finally adjusting the rights of the respective parties, the Nebraska Supreme Court commented thus:

"The court allowed Lamb $300 for services in procuring the confirmation of the sale. We cannot but regard this as an unwarranted allowance. The sale was on such terms that Olson was entirely uninterested in its confirmation, and it was evident that Lamb performed these services on his own behalf."

We have seen that such observations cannot be made in respect to the case at bar. The settlement of the Buckingham-Wooleyhan judgment, the sale of the property, and

the other services for which the fee was here allowed were without doubt for the benefit of the trust estate, and we find the cost of the same to be properly chargeable against the common fund.

The judgment of the Court of Chancery will be affirmed.