**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: October 6, 2015
Date Decided: October 14, 2015

Mary Ann Plankinton, Esquire
Gawthrop Greenwood, P.C.
3701 Kennett Pike, Suite 100
Wilmington, DE 19807

David J. Ferry, Jr., Esquire
Brian J. Ferry, Esquire
Ferry Joseph, P.A.
824 Market Street, Suite 1000
P.O. Box 1351
Wilmington, DE 19899

Re:     *Korn v. Korn*, Civil Action No. 8266-VCG

Dear Counsel:

This matter commenced as a request for partition of a condominium property owned jointly by Mrs. Korn ("Mother") and Mr. Korn ("Son"). Mother counterclaimed, alleging, among other things, that Son had withdrawn substantial funds from a joint bank account (the "Joint Account") created by Mother which she had re-titled in the name of Mother and Son. Mother alleged that Son was added to the Joint Account only as a convenience to her; Son argued that the Joint Account represented a present gift from Mother to Son. That issue, and others, were tried on July 15, 2014. Following trial, I found that Mother had placed Son on the Joint Account solely as a convenience to her, and did not have donative intent when the Joint Account was created. I ordered son to account for sums he had withdrawn from the Joint Account. Son filed a proposed accounting, based on

the records of the Joint Account, showing that (net of deposits) he had withdrawn $401,000 during the time the Joint Account was open. I held a hearing on a paper record[1] on October 6, 2015. At the hearing, Mother argued that a transfer of $50,000 by Son from the joint account should be added to the amount he must reimburse, but I find that that amount has already been accounted for. In addition, Mother invokes the unclean hands doctrine, arguing that one of the deposits for which Son seeks an offset was the subject of Son's divorce proceedings, at which he allegedly misrepresented to the Family Court that the deposit represented a "repayment" of a loan from Mother. Even assuming such a misrepresentation occurred, despite Son's efforts, he is now, in fact, making a "repayment," via this accounting; Mother, by invoking unclean hands, seeks the windfall of having that amount repaid twice. Equity would not be served thereby.

Therefore, I find that Son must account to Mother in the amount of $401,000. Mother also seeks an award of what she terms "interest."

This Court has the discretion to award pre-judgment interest in equitable cases,[2] and, recognizing the opportunity cost of money wrongfully converted, does so as a matter of course. Here, however, Mother has forgone requesting a straightforward award of interest, seeking instead recovery for supposed out-of-

---

[1] The parties were invited to provide testimony or otherwise supplement the record, but declined other than Mother's in-hearing submission of her Letter Memorandum with Exhibits that had been previously submitted electronically.

[2] *E.g., Hayward v. Green,* 88 A.2d 806 (Del. 1952).

pocket costs in lieu of a traditional interest award. To understand Mother's request, and why I deny it, requires an understanding of the nature of the Joint Account, and the effect of Son's withdrawals upon it.

According to Mother, the Joint Account was a non-cash, asset-based account that treated each withdrawal as a loan against the underlying assets for which monthly interest accrued. When income produced by the assets was insufficient to pay the monthly interest due, the bank would sell a portion of the underlying assets to cover the interest, thereby reducing the amount of assets remaining to produce future income. Mother provided a spreadsheet (the "Interest Calculation") that purports to calculate out-of pocket interest of $66,024.94;[3] Mother also provided select pages from Morgan Stanley client statements (the "Client Statements") to support the Interest Calculation.[4] Although many of the interest charges used in the Interest Calculation do, in fact, trace directly to the Client Statements, other aspects of the Interest Calculation leave many unanswered questions.

First, the Interest Calculation starts with a beginning interest balance and also includes monthly interest for August 2010; that is, it attempts to charge for interest *before* Son's first withdrawal, which did not occur until September 2010. Second, Mother did not provide Morgan Stanley client statements for the entire interest period alleged in the Interest Calculation. The Interest Calculation

---

[3] Def.'s Pre-Trial Letter Memo., Ex. I.
[4] Def.'s Pre-Trial Letter Memo., Ex. H.

includes accrued interest through March 2014, but the Client Statements end on November 2012. Finally, there are discrepancies between the Client Statements and the Interest Calculation. The Client Statements provide monthly loan principal balances that are used to calculate monthly interest; these principal balances neither match the net withdrawals I established above or a manually calculated running summation of net withdrawals provided in the Interest Calculation. As a result, the mechanics of the account as they pertain to interest remain unclear. Mother has failed to explain, and the Interest Calculation has failed to otherwise clarify, how certain aspects of the account—specifically margin calls, Son's deposits, and quarterly dividends—factor into the calculation of out-of-pocket costs. As a result, Mother has not sufficiently supported an "out-of-pocket" interest award.

Since I cannot award Mother the amounts she seeks as pre-judgment "interest" upon the record before me, and since Mother has not requested that I apply the legal rate of interest (or similar metric) to the periods following Son's withdrawal of Mother's funds, the question arises whether I should employ my equitable discretion to award some quantum of pre-judgment interest nonetheless. Equity requires no interest award here, in my opinion. This is so for a number of reasons. First, without revisiting in full the many issues raised in this litigation, I must take into account all the equities present here, including that Mother argued,

4

unsuccessfully, that the transfer of a joint interest in her real property to Son was a mere convenience, and not a gift; nonetheless she remained in possession of the real property throughout this litigation, implying a countervailing opportunity cost suffered by Son. Next, while I found in Mother's favor as to the "convenience account" theory with respect to the Joint Account, Mother remained competent to and did handle her own affairs; the establishment of a convenience account was necessarily in contemplation of, not recognition of, her inability to handle those affairs. Mother had access to the bank statements reflecting Son's withdrawals, which were mailed directly to her, but nonetheless she disregarded them. Had she acted with reasonable prudence, she could have prevented the lion's share of the withdrawals subject to the accounting. Finally, I note that the funding of the Joint Account with gold stocks, a strategy that predated Son's involvement, and the rapidly falling value of the stock (as pointed out by Mother's Counsel during the litigation) gives me no confidence that interest on amounts removed from the Joint Account by Son, together with repayment of the principal, would not represent a windfall to Mother. For all these reasons, specific to the unique facts here, equity does not support pre-judgment interest on the amount to be accounted for.

For the forgoing reasons, Son must account to Mother in the amount of $401,000. The parties should provide an appropriate order, and inform me of any issues remaining in this litigation.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III